Opinion
 

 MASTERSON, J.
 

 Plaintiff Eddie Jackson, a safety police officer with the County of Los Angeles (County), sustained a work-related injury to his back.
 
 *175
 
 He filed a workers’ compensation claim, but continued to perform his job without the need for any accommodation. Jackson received a workers’ compensation award of $48,359. The award also contained a work restriction mandating that Jackson’s employment be free from emotional stress and strain. In compliance with the work restriction, the County placed Jackson on extended medical leave.
 

 Jackson filed this action under the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. §§ 12101-12213), alleging that the County had discriminated against him because of his disability. The trial court granted summary judgment in favor of the County on the ground that Jackson’s work restriction rendered him unqualified for employment. We affirm.
 

 Background
 

 In October 1974, Jackson began his employment with the County as a safety police officer I. At some point, he was assigned to County-U.S.C. Medical Center (Medical Center) and was promoted to safety police officer III. According to Jackson’s performance evaluations, his job responsibilities included protecting patients, visitors, employees, and members of the public from acts of violence; safeguarding County property by responding to fires, bomb threats, and hazardous material spills; and arresting individuals engaged in criminal activity. These duties required that Jackson carry a firearm.
 

 The formal class specification for the position of safety police officer HI states that “[positions allocable to this class . . . [are assigned to] isolated fixed posts, or conduct individual foot and vehicle patrol of premises where the patrons and clientele include a high proportion of aggressive and quarrelsome individuals and groups hostile to authority, and who often react to the frustration of having rules imposed that regulate their behavior by resorting to physical assault upon persons or property. The areas included within these assignments are often invaded by groups and/or individuals who come upon the premise[s] to commit crimes such as theft, vandalism and rape. . . . [*]Q Positions allocable to this class are distinguished from full-time peace officer positions by the limited nature of their law enforcement authority. Such authority is limited to the enforcement of law only as necessary to prevent injury to persons or damage to or theft of property within the area or areas of the County facility of facilities of the shift to which they are posted or assigned.” The class specification indicates that the position of safety police officer HI has a physical class rating of “4,” which means that the physical demands of the job are “arduous.”
 

 In March 1991, Jackson sustained an injury while restraining a hyperactive patient who was on phencyclidine, commonly known as PCP. Shortly
 
 *176
 
 thereafter, Jackson filed a claim for workers’ compensation benefits, alleging injuries to his back, shoulder, and psyche. While the claim was pending, Jackson continued to perform his job satisfactorily. He did not miss any work because of the injury. Nor did he request or require any accommodation to perform his job.
 

 In connection with the workers’ compensation claim, Jackson’s attorney selected two physicians, Drs. Richard Low and Jack Kroeger, to evaluate his injuries.
 
 [1]
 
 In a report dated April 16, 1992, Dr. Low found that Jackson suffered from several work-related health problems, including hypertension. Dr. Low stated: “Mr. Jackson is labor disabled based solely upon the condition of worsening hypertension. Furthermore, this condition is now permanent and stationary for purposes of rating.” Under the heading, “Work Restrictions,” Dr. Low advised: “By virtue of the worsening hypertension, and based solely on this condition, the patient is restricted to working in an environment free of emotional stress and strain, and no heavy work as fatigue tends to aggravate these findings and set him up for life threatening complications.”
 

 On September 10, 1992, Dr. Kroeger reported: “The subjective factors of disability are occasional slight to moderate low back pain when getting out of bed in the morning. [H . . . The objective factors of disability include restriction of low back motion with pain on terminal range, tenderness in the area and
 
 50%
 
 restricted squatting.” Under the heading, “Work Restrictions,” Dr. Kroeger stated: “Mr. Jackson is to avoid quick back movements and strains, including heavy lifting, repeated bending and stooping.” Under the heading, “Rehabilitation,” Dr. Kroeger wrote: “Mr. Jackson is a Qualified Injured Worker. He is unable to return to his usual occupation as a safety police [officer]. He is eligible for vocational retraining and rehabilitation.”
 

 At the County’s request, Jackson was also evaluated by Randolph Noble, M.D. In a February 1, 1993, report, Dr. Noble concluded: “Mr. Jackson is presently working full time and there does not appear to be an internal medicine disability precluding him from his usual and customary job activities. ['][] . . . [I]t is my opinion that Mr. Jackson could perform his usual and customary occupational duties without restriction. Work preclusions are not indicated.”
 

 In early April 1993, Jackson’s workers’ compensation claim was resolved by way of the parties’ “Stipulations with Request for Award,” which they filed with the Workers’ Compensation Appeals Board. The stipulations
 
 *177
 
 recited that Jackson’s injuries had caused “permanent disability” of 62’A percent “for which indemnity is payable ... in the sum of $48,359.00 . . . .” The stipulations further stated: “The parties mutually agree that Applicant is under a work restriction as follows: HD a) no heavy lifting, repetitive bending and stooping and quick back movements and strains (Dr. Kroeger 9/10/92). [U b) work environment free from emotional stress and strain and no heavy work (Dr. Low 4/16/92).” The stipulations were signed by Jackson, his attorney, and a representative of the County.
 
 [2]
 
 On April 8, 1993, a workers’ compensation judge issued an award based on the stipulations. The award expressly incorporated the work restrictions set forth in the stipulations.
 

 By letter dated April 19, 1993, the County’s workers’ compensation administrator informed Adele Harris, who worked in the County’s “retumto-work” unit, of Jackson’s work restrictions. Subsequently, Jackson’s superiors decided that his work restriction mandating a stress-free environment precluded him from continuing to serve as a safety police officer and that there were no accommodations that would permit him to continue in that job.
 

 On April 23, 1993, Jackson’s supervisor told him that he was being relieved of his duties as a safety police officer because there were no positions that were free from emotional stress. In an effort to accommodate Jackson’s work restrictions, the County attempted to find another position for him at the Medical Center or in a different safety police division within the department of health services. The County also provided Jackson with vocational rehabilitation services through Anami Rehabilitation Services, Inc. However, Jackson withdrew from the rehabilitation program after a few weeks. The only position he wanted or would consider was that of safety police officer III. Beginning on or about April 23, 1993, Jackson was placed on a medical leave of absence. At that time, the County still considered him to be an employee.
 

 In October 1993, Jackson filed a charge with the United States Equal Employment Opportunity Commission (EEOC), alleging that the County had violated the ADA. In July 1994, he received a right-to-sue letter from the United States Department of Justice authorizing him to file a civil suit under the ADA within 90 days. The department did not make any determination regarding the merits of Jackson’s claim.
 

 In October 1994, Jackson filed this action, alleging that the County had violated the ADA by failing to accommodate his disability and by terminating his employment on April 23, 1993. Jackson also alleged that the County had treated him as if he had a disability when in fact he did not.
 

 
 *178
 
 In May 1996, Jackson filed a motion for summary adjudication, seeking to establish the County’s liability under the ADA as a matter of law. For its part, the County moved for summary judgment, arguing that it had not unlawfully discriminated against Jackson. On July 24, 1996, the trial court continued the hearing on both motions and instructed the parties to file supplemental memoranda discussing the effect, if any, of the workers’ compensation award on Jackson’s lawsuit. The parties complied. After the presentation of oral argument, the trial court granted summary judgment for the County. The trial court concluded that, under the doctrine of judicial estoppel, Jackson’s workers’ compensation award precluded his ADA claim. Judgment was entered accordingly.
 
 [3]
 
 Jackson filed a timely appeal.
 
 [4]
 

 Discussion
 

 The County contends that the work restrictions imposed on Jackson by the workers’ compensation award rendered him unqualified for employment and that, as a result, the County did not unlawfully discriminate against him because of a disability. We agree.
 

 Summary judgment is appropriate if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)
 

 “A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action], . . . Once the defendant’s burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. ... In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as
 
 *179
 
 shown by the parties give rise to a triable issue of material fact. ... In making this determination, the moving party’s affidavits are strictly construed while those of the opposing party are liberally construed.”
 
 (Hanooka
 
 v.
 
 Pivko
 
 (1994) 22 Cal.App.4th 1553, 1558 [28 Cal.Rptr.2d 70], citations omitted; see also Code Civ. Proc., § 437c, subd. (o)(2).) We accept as undisputed facts only those portions of the moving party’s evidence that are not contradicted by the opposing party’s evidence.
 
 (Kelleher
 
 v.
 
 Empresa Hondurena de Vapores, S.A.
 
 (1976) 57 Cal.App.3d 52, 56 [129 Cal.Rptr. 32].) In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true. (See
 
 Zeilman
 
 v.
 
 County of Kern
 
 (1985) 168 Cal.App.3d 1174, 1179, fh. 3 [214 Cal.Rptr. 746];
 
 Neinstein
 
 v.
 
 Los Angeles Dodgers, Inc.
 
 (1986) 185 Cal.App.3d 176, 179 [229 Cal.Rptr. 612].)
 

 A.
 
 The ADA
 

 The ADA makes it unlawful for an employer to “discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.” (42 U.S.C. § 12112(a).) A “qualified individual with a disability” is “an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.”
 
 (Id.,
 
 § 12111(8).) “Disability” means (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual, (2) a record of such an impairment,
 
 or
 
 (3) being regarded as having such an impairment.
 
 (Id.,
 
 § 12102(2).)
 
 [5]
 
 “Reasonable accommodation” includes “[modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.” (29 C.F.R. § 1630.2(o)(ii) (1997).)
 
 [6]
 
 “Essential functions” are “the fundamental job duties of the employment position the individual with a disability holds or desires. [They]
 
 *180
 
 do[] not include the marginal functions of the position.” (29 C.F.R. § 1630.2(n)(l) (1997).)
 

 The ADA prohibits several forms of “discrimination,” including: “(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of [his] disability . . . ; HD • • • [H [(2)] excluding or otherwise denying equal jobs or benefits to a qualified individual because of [his] known disability . . . ; [and] [*][] [(3)] not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business . . . .” (42 U.S.C. § 12112(b)(1), (4), (5)(A).) “Undue hardship” means an action requiring significant difficulty or expense by the employer.
 
 (Id,.,
 
 § 12111(10)(A); 29 C.F.R. § 1630.2(p) (1997); see also 42 U.S.C. § 12111(10)(B) [discussing factors to be considered in determining whether reasonable accommodation would impose an undue hardship on employer].)
 

 From the record, it appears that Jackson’s ADA claim may be based on several distinct theories of liability. The complaint alleged that Jackson was discharged because of his disability (i.e., a “disparate treatment” theory). Yet, he offered evidence to the effect that he did not have an actual disability but the County treated him as if he did (i.e., a “perceived disability” theory). Moreover, he argues that the County did not reasonably accommodate his disability (i.e., a “failure to accommodate” theory). Typically, a plaintiff’s theory of liability determines the analysis to be applied on a summary judgment motion. (See
 
 Brundage
 
 v.
 
 Hahn
 
 (1997) 57 Cal.App.4th 228, 236 [66 Cal.Rptr.2d 830] [applying burden-shifting analysis of
 
 McDonnell Douglas Corp.
 
 v.
 
 Green
 
 (1973) 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] to disparate treatment claim under ADA];
 
 Bultemeyer
 
 v.
 
 Fort Wayne Community Schools
 
 (7th Cir. 1996) 100 F.3d 1281,1283-1287 [burden-shifting analysis of
 
 McDonnell Douglas
 
 applies to disparate treatment claims under ADA but not to claims based on failure to accommodate];
 
 Williams
 
 v.
 
 Channel Master Satellite Systems, Inc.
 
 (4th Cir. 1996) 101 F.3d 346, 348 & fn. 1 [burden-shifting analysis of
 
 McDonnell Douglas
 
 not appropriate where employer admits that it terminated employee because of her alleged disability].)
 

 In any event, regardless of Jackson’s particular theory of liability, he cannot prevail unless he is a “qualified individual with a disability.” (42 U.S.C. § 12112(a) [prohibiting discrimination against a “qualified individual with a disability”];
 
 Bultemeyer
 
 v.
 
 Fort Wayne Community Schools, supra,
 
 100
 
 *181
 
 F.3d at p. 1284 [“. . . the ADA prohibits discrimination against only ‘qualified individuals] with a disability’ ”].) We find that, under the doctrine of judicial estoppel, Jackson is precluded from making that showing.
 

 B.
 
 Judicial Estoppel
 

 “Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the judicial process.”
 
 (Cleveland
 
 v.
 
 Policy Management Systems Corp.
 
 (5th Cir. 1997) 120 F.3d 513, 517, fn. omitted.) “This obviously contemplates something other than the permissible practice ... of simultaneously advancing in the same action inconsistent claims or defenses which can then, under appropriate judicial control, be evaluated as such by the same tribunal, thus allowing an internally consistent final decision to be reached.”
 
 (Allen
 
 v.
 
 Zurich Ins. Co.
 
 (4th Cir. 1982) 667 F.2d 1162, 1167; see
 
 Rader Co.
 
 v.
 
 Stone
 
 (1986) 178 Cal.App.3d 10, 29 [223 Cal.Rptr. 806] [plaintiff permitted to plead alternative or inconsistent theories in complaint]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1997) ¶¶ 6:242 to 6:247, pp. 6-50 to 6-52 [same].) Consequently, judicial estoppel is especially appropriate where a party has taken inconsistent positions in separate proceedings. (See, e.g.,
 
 Astor Chauffeured Limousine
 
 v.
 
 Runnfeldt Inv.
 
 (7th Cir. 1990) 910 F.2d 1540, 1547-1548; Note,
 
 Judicial Estoppel: The Refurbishing of a Judicial Shield
 
 (1987) 55 Geo. Wash. L.Rev. 409, 418-419; see also
 
 Rissetto
 
 v.
 
 Plumbers and Steamfitters Local 343
 
 (9th Cir. 1996) 94 F.3d 597, 605.)
 

 “ ‘The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. . . . “The policies underlying preclusion of inconsistent positions are ‘general consideration^] of the orderly administration of justice and regard for the dignity of judicial proceedings.’ ”... Judicial estoppel is “intended to protect against a litigant playing ‘fast and loose with the courts.’ ” ’ ”
 
 (Russell
 
 v.
 
 Rolfs
 
 (9th Cir. 1990) 893 F.2d 1033, 1037.) “It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite.” (Comment,
 
 The Judiciary Says, You Can’t Have It Both Ways: Judicial Estoppel—A Doctrine Precluding Inconsistent Positions
 
 (1996) 30 Loyola L.A. L.Rev. 323, 327 (hereafter
 
 You Can’t Have It Both Ways).)
 

 Although the doctrine of judicial estoppel has been recognized in California, our courts have not established a clear set of principles for applying it.
 
 *182
 
 This is not surprising since “[throughout its history, judicial estoppel has been a confusing . . . doctrine.”
 
 (You Can’t Have It Both Ways, supra,
 
 30 Loyola L.A. L.Rev. at p. 353.) One early decision commented that “[t]his form of estoppel is of vague application . . . , and it is not our purpose to fix its boundaries.”
 
 (Associated Creditors’ Agency
 
 v.
 
 Wong
 
 (1963) 216 Cal.App.2d 61, 67 [30 Cal.Rptr. 705].) Another court has stated that “[t]he proper application of this doctrine is at best uncertain.”
 
 (Ng
 
 v.
 
 Hudson
 
 (1977) 75 Cal.App.3d 250, 258 [142 Cal.Rptr. 69].) Yet, it has long been settled that “[o]ne to whom two inconsistent courses of action are open and who elects to pursue one of them is afterward precluded from pursuing the other.”
 
 (Schulze
 
 v.
 
 Schulze
 
 (1953) 121 Cal.App.2d 75, 83 [262 P.2d 646].) Further, it is well established that, for the doctrine to apply, the seemingly conflicting positions “must be clearly inconsistent so hat one necessarily excludes the other.”
 
 (Coleman
 
 v.
 
 Southern Pacific Co.
 
 (1956) 141 Cal.App.2d 121, 128 [296 P.2d 386].) Moreover, he doctrine “cannot be invoked where the position first assumed was taken as a result of ignorance or mistake.”
 
 (Ibid.)
 

 [7]
 

 In understanding the doctrine of judicial estoppel, it is helpful to distinguish it from other forms of estoppel. “The distinction between collateral estoppel and judicial estoppel is fairly easy to make; accordingly, courts seldom confuse these two doctrines. Collateral estoppel bars a party from relitigating an issue of ultimate fact that a court already has adjudicated. It deals with the finality of judgment on factual matters that were fully considered and decided. Judicial estoppel, on the other hand, prevents inconsistent positions whether or not they have been he subject of a final judgment. . . . Collateral estoppel deprives a party of the right to relitigate an issue. The rationale is to conserve judicial resources by preventing repetitive litigation. In contrast, judicial estoppel deprives a party only of the right to assert a particular position. . . . Judicial estoppel is designed to maintain the purity and integrity of the judicial process by preventing inconsistent positions from being asserted.” (Comment,
 
 Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel
 
 (1986) 80 Nw. U. L.Rev. 1244,1247-1248, fns. omitted (hereafter
 
 Precluding Inconsistent Statements);
 
 
 *183
 
 accord,
 
 Teledyne Industries, Inc.
 
 v.
 
 N.L.R.B.
 
 (6th Cir. 1990) 911 F.2d 1214, 1219-1220.)
 

 Judicial estoppel also differs from equitable estoppel. “A party may invoke equitable estoppel to prevent his opponent from changing positions if (1) he was an adverse party in the prior proceeding; (2) he detrimentally relied upon his opponent’s prior position; and (3) he would now be prejudiced if a court permitted his opponent to change positions. Equitable estoppel ‘focuses on the relationship between the parties,’ and is designed to protect litigants from injury caused by ‘less than scrupulous opponents.’ By contrast, judicial estoppel focuses on ‘the relationship between the litigant and the judicial system,’ and is designed ‘to protect the integrity of the judicial process.’ [^Q ... By definition, equitable estoppel requires privity, reliance, and prejudice because the doctrine concentrates on the relationship between the parties to a specific case. Conversely, none of these elements is or should be required under the judicial estoppel doctrine. . . . The gravamen of judicial estoppel is not privity, reliance, or prejudice. Rather, it is the intentional assertion of an inconsistent position that perverts the judicial machinery.”
 
 (Precluding Inconsistent Statements, supra,
 
 80 Nw. U. L.Rev. at pp. 1248-1249, fns. omitted; accord,
 
 You Can’t Have It Both Ways, supra,
 
 30 Loyola L.A. L.Rev. at pp. 328-332; Ziegler,
 
 Judicial Estoppel: The Doctrine of Preclusion of Inconsistent Positions,
 
 11 Inside Litigation No. 3 (Mar. 1997) p. 15 (hereafter Ziegler);
 
 Billmeyer
 
 v.
 
 Plaza Bank of Commerce, supra,
 
 42 Cal.App.4th at p. 1092;
 
 Teledyne Industries, Inc.
 
 v.
 
 N.L.R.B., supra,
 
 911 F.2d at pp. 1219-1220.)
 

 In accordance with the purpose of judicial estoppel, we conclude that the doctrine should apply when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake. (See
 
 Coleman
 
 v.
 
 Southern Pacific Co., supra,
 
 141 Cal.App.2d at p. 128;
 
 Rissetto
 
 v.
 
 Plumbers and Steamfitters Local 343, supra,
 
 94 F.3d at pp. 604-605;
 
 Hindman
 
 v.
 
 Greenville Hosp. Sys.
 
 (D.S.C. 1996) 947 F.Supp. 215, 221;
 
 Consolidated Stores Inc.
 
 v.
 
 Gargis
 
 (Ala.Civ.App. 1996) 686 So.2d 268, 274-275;
 
 Timothy Christian Schools
 
 v.
 
 Village
 
 (1996) 285 Ill.App.3d 949 [221 Ill.Dec.261, 675 N.E.2d 168, 173];
 
 Precluding Inconsistent Statements, supra,
 
 80 Nw. U. L.Rev. at pp. 1258-1267; Ziegler,
 
 supra,
 
 11 Inside Litigation No. 3 at pp. 16-17.)
 
 [8]
 

 
 *184
 
 C.
 
 The Effect of the Workers’ Compensation Award
 

 Although the ADA is a federal statute, we apply state law principles of judicial estoppel in determining whether Jackson’s claim is barred. “Judicial estoppel enables a court to protect itself from manipulation. The interested party is thus the court in which a litigant takes a position incompatible with one the litigant has previously taken. The tribunal in which the litigant made the first statement could also be interested .... but it is not in a position to do anything about its interest. Therefore, for all practical purposes, the interests of the second court are uniquely implicated and threatened by the taking of an incompatible position.”
 
 (Rissetto
 
 v.
 
 Plumbers and Steamfitters Local 343, supra,
 
 94 F.3d at pp. 603-604.) Accordingly, state law governs the issue before us, although federal decisions may provide guidance on the subject. (See
 
 Prilliman
 
 v.
 
 United Air Lines, Inc., supra,
 
 53 Cal.App.4th at pp. 959-960.)
 

 “A significant number of federal courts have . . . decided that a person who characterizes herself as ‘totally disabled’ in order to receive state, federal, or even insurance benefits will normally be estopped from proving that she is a qualified individual with a disability within the meaning of the ADA or similar state laws. [Citations.] Different courts have positioned themselves on the other side of this dispute, holding that one who represents herself as ‘totally disabled’ for purposes extraneous to the ADA should still have an opportunity to recover under that statute. [Citations.]”
 
 (Dush
 
 v.
 
 Appleton Elec. Co.
 
 (8th Cir. 1997) 124 F.3d 957, 961-962.)
 

 In
 
 Rissetto
 
 v.
 
 Plumbers and Steamfitters Local 343, supra,
 
 94 F.3d 597, the Ninth Circuit held that federal principles of judicial estoppel barred the plaintiff’s claims, including an age discrimination claim under the FEHA, where she had received workers’ compensation benefits for temporary total disability. The plaintiff’s civil action was premised on the theory that she had been able to perform her job but that she had been constructively discharged.
 
 (Id.
 
 at pp. 599, 606.) However, the Ninth Circuit found that
 
 *185
 
 theory to be inconsistent with the basis of the employee’s workers’ compensation award. As the court explained: “[Plaintiff claimed and obtained money [in the workers’ compensation proceeding] on the basis of an assertion that she had an ‘inability to work,’ indeed a ‘total’ inability to earn income. Yet she claims in this lawsuit that she was performing her job adequately and that defendants’ cutting her down to one or two days per week was a mere pretext for age discrimination, rather than an appropriate response to her physical inability to perform her job. [U Plaintiff cannot be permitted to recover money twice on these inconsistent positions. We hold that, having obtained a favorable [workers’ compensation] settlement based on her assertion that she could not work, plaintiff was estopped from claiming that she was performing her job adequately.”
 
 (Id.
 
 at pp. 605-606.)
 

 In
 
 Dush
 
 v.
 
 Appleton Elec. Co., supra,
 
 124 F.3d 957, the employer had terminated an employee for failure to work a full eight-hour day. The employee argued that her termination violated the ADA because she was a “qualified individual with a disability.” In particular, she claimed that she could have continued to work with a reasonable accommodation, i.e., a light-duty assignment. Relying on the doctrine of judicial estoppel, the Eighth Circuit affirmed summary judgment for the employer based on the findings made in the employee’s workers’ compensation proceeding. The court stated: “[Plaintiff] posits that being ‘totally disabled’ for purposes of Nebraska’s workers’ compensation law has no bearing on the question of whether she is a qualified individual with a disability. This is because the ADA includes the concept of ‘reasonable accommodation,’ whereas workers’ compensation law does not. . . . According to [the plaintiff], she could have been totally disabled under Nebraska law, but still have been able to perform the essential functions of her job with a reasonable accommodation (namely, reduced hours). . . . The problem with this contention, however, is that the workers’ compensation court addressed the issue of shorter shifts and specifically ruled that [the plaintiff] was ‘unable to continue this light duty employment on any long term sustained basis.’ At least in this case, then, the workers’ compensation proceedings in Nebraska did, indeed, take into account the only reasonable accommodation which [the plaintiff] now asserts would have allowed her to perform her job. Consequently, the state administrative tribunal’s characterization of [the plaintiff] as ‘totally disabled’ was equivalent to a finding that she was not qualified under the ADA.”
 
 (Id.
 
 at pp. 964-965, citations and fhs. omitted.)
 

 Similarly, in
 
 Cheatwood
 
 v.
 
 Roanoke Industries
 
 (N.D.Ala. 1995) 891 F.Supp. 1528, the findings made in a workers’ compensation proceeding precluded an employee’s ADA claim alleging discriminatory termination. There, the employee worked for an industrial manufacturer of plastic parts as
 
 *186
 
 a machine operator, making such products as playground equipment and 60-gallon tanks. The job of machine operator required significant bending, stooping, and stretching, as well as the routine lifting of objects weighing up to 110 pounds. In July 1991, the employee sustained a back injury. He remained out of work for approximately two and one-half years while he sought workers’ compensation benefits. In February 1994, a workers’ compensation judge found that the employee had sustained a disability with a rating of 56 percent and that he “had the permanent work restrictions of lifting no more than 25 pounds and no prolonged bending, stooping, or lifting.”
 
 (Id.
 
 at p. 1535.) The day after the employee received the workers’ compensation award, he attempted to return to his former job. The employer informed him that he was being terminated because all of the positions at the plant required lifting more than 25 pounds. In rejecting the employee’s contention that he was a “qualified individual with a disability,” the district court invoked the doctrine of judicial estoppel, noting that the workers’ compensation proceeding had determined that “plaintiff was physically unable to perform the essential functions of any job at defendant’s plant as of [his date of termination], even with accommodation.”
 
 (Id.
 
 at p. 1538.) The district court therefore granted summary judgment for the employer.
 
 [9]
 

 Finally, in
 
 Prilliman
 
 v.
 
 United Air Lines, Inc., supra,
 
 53 Cal.App.4th 935, Division Seven of this court declined to apply judicial estoppel to bar an employee’s disability discrimination claim under the FEHA. In
 
 Prilliman,
 
 the plaintiff, a pilot, was grounded and placed on disability leave after United Airlines learned that he had been diagnosed with acquired immune deficiency syndrome. The plaintiff alleged that United Airlines had failed to accommodate his disability since it had not determined whether he could perform an alternative nonflight job (e.g., pilot instructor). For its part, United Airlines argued that, under the doctrine of judicial estoppel, the employee’s receipt of disability benefits from the company, the Social Security Administration, and the State of California precluded his discrimination claim.
 
 (Id.
 
 at pp. 944, 946.) According to United Airlines, the employee’s receipt of disability benefits was inconsistent with his contention in the FEHA action that he was able to work in a nonflight job. In addition, on an application for company benefits, the plaintiff’s treating physician had stated that the plaintiff was on “permanent total disability.”
 
 (Id.
 
 at pp. 943-944, 963.) The Court of Appeal concluded that judicial estoppel did not apply because the plaintiff’s disability discrimination claim was not “clearly inconsistent” with the position he had taken in seeking disability benefits. {Id. at p. 963.)
 

 
 *187
 
 From these authorities, we discern that the term “disability,” as used in determining income eligibility under benefit programs such as workers’ compensation, is not necessarily used in the same way for purposes of the ADA. However, while “disability” may have different meanings in the two contexts, the findings made in the administrative proceeding may, in some situations, judicially estop an employee from pursuing an ADA claim.
 

 This conclusion is consistent with a recent “enforcement guidance” issued by the EEOC, the agency statutorily charged with administering the ADA. (See 42 U.S.C. §§ 12116, 12117.)
 
 [10]
 
 As the EEOC has explained:
 

 “Because the ADA definitions of the terms ‘disability’ and ‘qualified individual with a disability’ are tailored to the broad remedial purposes of the Act, they differ from the definitions of the same or similar terms used in other laws and benefits programs designed for other purposes. The definitions of the terms used in the Social Security Act, state workers’ compensation laws, disability insurance plans, and other disability benefits programs are tailored to the purposes of those laws and programs. Therefore, representations made under those laws and programs are not determinative of coverage under the ADA. . . .
 

 “The workers’ compensation definitions of ‘disability’ reflect the purposes of workers’ compensation laws. Those laws provide a system for securing prompt and fair settlement of employees’ claims against employers for occupational injury and illness. In that regard, the laws generally require employers to compensate employees who are injured in the course of employment for the resulting loss of earning capacity and for medical care. Thus, workers’ compensation provides benefits to individuals whose earning capacity has been reduced because of a work-related injury. Because of the emphasis on lost earning capacity, the workers’ compensation definitions of disability generally focus on what a person can no longer do rather than on what s/he still is capable of doing with or without reasonable accommodation.
 

 “To receive workers’ compensation benefits, an employee generally must prove that s/he has a compensable ‘disability’ as defined by the applicable workers’ compensation statute. The term ‘disability’ in this context most commonly means loss or reduction of earning power that results from a work-related injury.
 

 
 *188
 
 “Some [workers’ compensation] statutes, however, do not define ‘disability’ in terms of lost earning capacity. Instead, under these statutes, an injured worker has a ‘disability’ if his/her physical efficiency has been substantially reduced, or if s/he is unable to perform the same work with the same ease as before the injury or is unable to do heavy work that s/he could do before the injury. Under these statutes, the worker has a ‘disability’ even if s/he is employed at the same work and at the same wages as before the injury.
 

 “[U]nlike the ADA definition of ‘qualified individual with a disability,’ the workers’ compensation definitions of ‘disability’ do not distinguish between marginal and essential functions and do not consider whether an individual can work with reasonable accommodation. In many workers’ compensation cases, a person has a ‘total disability’ when s/he is unable to do certain tasks, even if those tasks are marginal functions or if s/he could perform them with reasonable accommodation. Thus, a person may be ‘totally disabled’ for workers’ compensation purposes and yet still be able to perform a position’s essential functions with or without reasonable accommodation. [U . . . fid . . . Accordingly, an individual receiving workers’ compensation benefits still may be entitled to protection under the ADA.” (EEOC Enforcement Guidance on the Effect of Representations Made in Applications' for Benefits on the Determination of Whether a Person Is a “Qualified Individual with a Disability” Under the Americans with Disabilities Act of 1990, in Avoiding Workplace Litigation (PLI Litig. & Admin. Practice Course Handbook Series No. H4-5261 (1997) pp. 151-164, fns. omitted, cited with approval in
 
 Swanks
 
 v.
 
 WMATA
 
 (D.C. Cir. 1997) 116 F.3d 582, 586 [325 App.D.C. 238].)
 

 In this case, the County acknowledges that it removed Jackson from his job and placed him on an extended medical leave because of his disability. In granting summary judgment, the trial court did not invoke judicial estoppel based on any representations Jackson had made in seeking workers’ compensation benefits (e.g., that he was “disabled”). Nor did the trial court rely on Jackson’s receipt of disability benefits or on the finding in the workers’ compensation proceeding that he had a “permanent disability” (with a rating of 65 percent). Rather, the trial court found that judicial estoppel barred Jackson’s ADA claim because of the position he took in the workers’ compensation proceeding with respect to his work restrictions. We agree.
 
 [11]
 

 Workers’ compensation awards may be based upon stipulations between the parties. (Lab. Code, § 5702.) A “Stipulations with Request for Award” is
 
 *189
 
 assigned to a workers’ compensation judge, who will either make findings and an award based on the stipulations, set the matter for hearing to take testimony, or conduct further investigation into the matter. (Cal. Workers’ Compensation Practice (Cont.Ed.Bar 3d ed. 1985) § 5.41, pp. 174-175; Lab. Code, § 5702.) All medical reports and other documentary evidence must be submitted with the stipulations so that the workers’ compensation judge can ensure that the stipulations are fair to the applicant. (Cal. Workers’ Compensation Practice,
 
 supra,
 
 § 5.41, p. 175.) “If the stipulation does not adequately reflect the disability of the applicant, it [is] not. . . accepted by the workers’ compensation judge as the basis for his or her award.”
 
 (Draper
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1983) 147 Cal.App.3d 502, 507 [195 Cal.Rptr. 248]; accord,
 
 Robinson
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1987) 194 Cal.App.3d 784, 792-793 [239 Cal.Rptr. 841].)
 

 Here, the “Stipulations with Request for Award” stated that the parties had “mutually agree[d]” that Jackson was under a restriction that his “work environment [be] free from emotional stress and strain and no heavy work.” The stipulations cited Dr. Low’s April 16, 1992, report as support for that restriction. Dr. Low had found that “[b]y virtue of. . . worsening hypertension, and based solely on this condition, the patient is restricted to working in an environment free of emotional stress and strain, and no heavy work as fatigue tends to aggravate these findings and set him up for life threatening complications.” The workers’ compensation judge accepted the parties’ stipulations and approved the work restriction as part of the award.
 
 [12]
 

 To prevail on his ADA claim, Jackson must establish that he is a “qualified individual with a disability.” (See 42 U.S.C. § 12112(a);
 
 Bultemeyer
 
 v.
 
 Fort Wayne Community Schools, supra,
 
 100 F.3d at p. 1284.) In other words, Jackson must prove that he could perform the essential functions of the job he held or desired, with or without reasonable accommodation. (42 U.S.C. §12111(8).) To make such a showing, Jackson would have to assert a position in this action that is totally inconsistent with the position he successfully pursued in the workers’ compensation proceeding. The doctrine of judicial estoppel forecloses that attempt.
 

 
 *190
 
 After receiving the workers’ compensation award, the only job Jackson wanted or would consider was that of safety police officer III. Yet, at his deposition, Jackson admitted that all of the duties of a safety police officer in involve stress. That admission is not surprising given the responsibilities of a safety police officer III, as described in Jackson’s performance evaluations and in the formal class specification for the job. Moreover, in opposing summary judgment, Jackson submitted a declaration from a physician (Dr. George Smith) who stated: “ ‘[Stress’ is unavoidable in our daily lives and, certainly, in our work. ... An excellent employee who seeks to challenge his or her capacity to perform in accepting difficult complex tasks may be under as much ‘stress’ as an employee who, through lack of qualification or suitability for a job, is challenged to do the minimum necessary for acceptable performance. In addition, conflict between employees or between an employee and a supervisor are ‘stressful’ situations that may arise in any employment setting.” Indeed, when David Zamorano, who works in the Medical Center’s human resources department, was asked at his deposition whether he knew of any jobs that are free of stress and strain, he replied, “I don’t believe there are any.”
 

 On this record, we find that the elements of judicial estoppel have been satisfied. First, Jackson has taken two positions: In the workers’ compensation proceeding, he agreed with Dr. Low’s assessment that he had to have a stress-free job; in this action, he claims that he could perform the essential functions of a safety police officer III. Second, both positions were taken in judicial or quasi-judicial administrative proceedings. Third, Jackson was successful in asserting the first position: The requirement of a stress-free job appeared in the parties’ “Stipulations with Request for Award” (which Jackson and his attorney signed), and the workers’ compensation judge adopted the stipulations in making the award. Fourth, the two positions are totally inconsistent: Jackson cannot have a stress-free work environment
 
 and
 
 perform the essential functions of a safety police officer III. The County has classified that job as “arduous” for good reason, and Jackson has admitted that
 
 all
 
 of the duties of a safety police officer III involve stress. Nor was a reasonable accommodation possible. Despite the County’s efforts to rehabilitate Jackson and find him an alternative job, he withdrew from the rehabilitation program and indicated that the only job he wanted was that of safety police officer III.
 
 [13]
 
 Finally, Jackson’s first position—that he needed a stress-free work environment—was not the result of ignorance, fraud, or
 
 *191
 
 mistake. Jackson knowingly agreed to the work restriction based on the report of Dr. Low, who evaluated Jackson at his attorney’s request. The parties’ stipulations recited the work restriction in language taken almost verbatim from Dr. Low’s report.
 
 [14]
 

 In closing, we comment briefly on the evidence submitted by Jackson in opposing summary judgment, none of which created a triable issue of material fact. First, although Dr. Noble—the physician selected by the County—found that Jackson was not subject to any work restrictions, the parties did not base their stipulations for the award on his report, nor did the workers’ compensation judge rely on it in making the award. Second, we find irrelevant the testimony of Jackson’s expert that the 65 percent disability rating did not prevent Jackson from performing the essential functions of his job with or without accommodation. We have concluded that judicial estoppel barred Jackson’s ADA claim based on the work restriction mandating a stress-free environment, not on the finding of permanent disability or the particular disability rating. Lastly, the fact that Jackson may have been performing his job satisfactorily
 
 before
 
 the workers’ compensation award does not mean the County should have allowed him to continue in that job
 
 after
 
 the award. Jackson expressly agreed in the workers’ compensation proceeding to be bound by the work restriction recommended by Dr. Low, and the workers’ compensation judge included that restriction in the award. The requirement that Jackson work in a stress-free environment precluded his continued performance as a safety police officer Ed, just as it bars his ADA claim. The doctrine of judicial estoppel ensures that Jackson will not “speak out of both sides of [his] mouth . . . before this court.”
 
 (Reigel
 
 v.
 
 *192
 

 Kaiser Foundation Health Plan of N.C.
 
 (E.D.N.C. 1994) 859 F.Supp. 963, 970.)
 
 [15]
 

 Disposition
 

 The judgment is affirmed.
 

 Ortega, Acting P. J., and Dunn, J.,
 
 *
 
 concurred.
 

 Appellant’s petition for review by the Supreme Court was denied March 11, 1998.
 

 [1]
 

 Jackson’s appellate counsel did not represent him in the workers’ compensation proceeding.
 

 [2]
 

 The stipulations did not rely on or refer to Dr. Noble’s conclusion that Jackson could work without restrictions.
 

 [3]
 

 By granting the County’s summary judgment motion, the trial court implicitly denied Jackson’s summary adjudication motion.
 

 [4]
 

 Under California Rules of Court, rule 15(a), “[t]he statement of any matter in the record shall be supported by appropriate reference to the record.” As to statements of fact, rule 15(a) is intended to direct the appellate court to
 
 evidence
 
 in the record. (See
 
 Eistrat
 
 v.
 
 J. C. Wattenbarger & Sons
 
 (1960) 181 Cal.App.2d 57, 63 [5 CaLRptr. 77].) Here, both parties repeatedly cite their own “separate statement” (see Code Civ. Proc., § 437c, subd. (b)) as the
 
 sole
 
 support for numerous “facts.” However, a separate statement is not evidence; it
 
 refers
 
 to evidence submitted in support of or opposition to a summary judgment motion. In an appellate brief, an assertion of fact should be followed by a citation to the page(s) of the record containing the supporting evidence. Of course, we do not suggest that citations to a separate statement cannot be helpful. For example, where the separate statement of the party opposing summary judgment indicates that a fact is undisputed, a citation to that page of the separate statement is of valuable assistance.
 

 [5]
 

 “Major life activities” means “functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.” (29 C.F.R. § 1630.2(i) (1997).) With respect to the major life activity of “working,” the term “substantially limits” means “significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.”
 
 (Id.,
 
 § 1630.2(j)(3)(i).)
 

 [6]
 

 Reasonable accommodation may include job restructuring, the use of part-time or modified work schedules, and reassignment to a vacant position. (42 U.S.C. § 12111(9)(B); see generally, 29 C.F.R. § 1630.2(o) (1997).)
 

 [7]
 

 Two decisions have discussed judicial estoppel in the context of lender liability claims where the debtor failed to list or identify those claims in a prior bankruptcy proceeding
 
 (Conrad
 
 v.
 
 Bank of America
 
 (1996) 45 Cal.App.4th 133, 146-147, 161-162 [53 Cal.Rptr.2d 336];
 
 Billmeyer
 
 v.
 
 Plaza Bank of Commerce
 
 (1995) 42 Cal.App.4th 1086, 1091-1092 & 1091, fn. 2 [50 Cal.Rptr.2d 119]). Another court has addressed the doctrine in an action for dissolution of marriage
 
 (In re Marriage of Dekker
 
 (1993) 17 Cal.App.4th 842, 849-850 [21 Cal.Rptr.2d 642]). The most recent decision to discuss the doctrine involved a disability claim under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.)
 
 (Prilliman
 
 v.
 
 United Air Lines, Inc.
 
 (1997) 53 Cal.App.4th 935, 956-964 [62 Cal.Rptr.2d 142]).
 

 [8]
 

 Under the majority view, the party sought to be estopped must have been successful in asserting the earlier position. (See
 
 Rissetto
 
 v.
 
 Plumbers and Steamfitters Local 343, supra,
 
 94
 
 *184
 
 F.3d at p. 601;
 
 You Can’t Have It Both Ways, supra,
 
 30 Loyola L.A. L.Rev. at pp. 336-344.) If the earlier position was not adopted by the tribunal, there is no danger of inconsistent results and thus no impairment of the judicial process. (See
 
 You Can’t Have It Both Ways, supra,
 
 30 Loyola L.A. L.Rev. at pp. 325-328, 353-355;
 
 Precluding Inconsistent Statements, supra,
 
 80 Nw. U. L.Rev. at pp. 1254-1258,1270; Ziegler,
 
 supra,
 
 11 Inside Litigation No. 3 at p. 17.) Nevertheless, judicial estoppel is an equitable doctrine.
 
 (Prilliman
 
 v.
 
 United Air Lines, Inc., supra,
 
 53 Cal.App.4th at p. 963;
 
 In re Marriage of Dekker, supra,
 
 17 Cal.App.4th at p. 850.) Consequently, we cannot rule out the possibility that, in a future case, circumstances may warrant application of the doctrine even if the earlier position was not adopted by the tribunal. (See
 
 Allen
 
 v.
 
 Zurich Ins. Co., supra, 661
 
 F.2d at p. 1167 [“Though perhaps not necessarily confined to situations where the party asserting the earlier contrary position [has] prevailed, [judicial estoppel] is obviously more appropriate in that situation.”].)
 

 [9]
 

 We rely on
 
 Cheatwood
 
 to the extent that the
 
 findings
 
 in the employee’s workers’ compensation proceeding precluded his ADA claim. We express no opinion on the
 
 Cheatwood
 
 court’s suggestion that the employee’s
 
 testimony
 
 in the administrative proceeding could provide a basis for applying judicial estoppel.
 

 [10]
 

 For a thorough discussion of the deference to be accorded the EEOC’s interpretation of the ADA, see
 
 Sicard
 
 v.
 
 City of Sioux City
 
 (N.D.Iowa 1996) 950 F.Supp. 1420, 1433-1435.
 

 [11]
 

 Because this case involves the application of judicial estoppel to an assertion of fact—that Jackson had to work in a stress-free environment—we need not decide whether the doctrine
 
 *189
 
 also applies to assertions of law. (See
 
 Helfand
 
 v.
 
 Gerson
 
 (9th Cir. 1997) 105 F.3d 530, 535 [while some courts limit judicial estoppel to a party’s factual positions, the majority of federal courts also apply the doctrine to legal assertions].)
 

 [12]
 

 Jackson points out that the award was not final on April 23, 1993, when the County relieved him of his duties and put him on medical leave. Actually, the award did not become final until five years after Jackson’s injury, i.e., in March 1996. (See Lab. Code, §§ 5410, 5803-5805, 5900, 5903;
 
 Greatorex
 
 v.
 
 Board of Administration
 
 (1979) 91 Cal.App.3d 54, 57 [154 Cal.Rptr. 37].) However, as stated, while the doctrine of
 
 collateral
 
 estoppel requires a final judgment,
 
 judicial
 
 estoppel does not.
 

 [13]
 

 In
 
 Pesterfield
 
 v.
 
 Tennessee Valley Authority
 
 (6th Cir. 1991) 941 F.2d 437, an employee brought a claim under the federal Rehabilitation Act of 1973 (29 U.S.C. § 791 et seq.), alleging that he had been terminated because of his handicap. The employee suffered from a psychological condition that rendered him unable to work if he was subjected to the “slightest hint of rejection or criticism.” (941 F.2d at p. 441.) The Sixth Circuit affirmed the district court’s conclusion that the employer could not have reasonably accommodated the
 
 *191
 
 employee. The district court had stated that it could not “ ‘. . . imagine any jobs where plaintiff could be immunized from any criticism or other normal stresses of the workplace. To accommodate the plaintiff, [the employer] would have had to . . . placefl him in a virtually stress-free environment. The court finds that such a job does not exist at the [employer’s facility]
 
 and perhaps cannot be found in any
 
 workplace.’ ”
 
 (Ibid.,
 
 italics added.)
 

 [14]
 

 In
 
 Prilliman
 
 v.
 
 United Air Lines, Inc., supra,
 
 53 Cal.App.4th 935, the court commented that any change in the plaintiff’s position was not “unjust” to the employer.
 
 (Id.
 
 at pp. 960, 963.) We do not interpret this comment to require detrimental reliance by the party invoking judicial estoppel. (See
 
 Billmeyer
 
 v.
 
 Plaza Bank of Commerce, supra,
 
 42 Cal.App.4th at p. 1092 [“ ‘The doctrine does not require reliance or prejudice before a party may invoke it.’ ”]; see also pt. B,
 
 ante
 
 [distinguishing judicial estoppel from equitable estoppel].) In any event, it would be unjust to allow Jackson to change positions. In the workers’ compensation proceeding, the parties mutually agreed to the work restrictions. The County was legally bound to comply with them. (See
 
 Robinson
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 194 Cal.App.3d at p. 790.) Further, Dr. Low had stated in his report that a stressful environment, in conjunction with heavy work, could “set [Jackson] up for life threatening complications.” Under these circumstances, it would be unjust to permit Jackson to ignore the work restrictions for purposes of his ADA claim.
 

 [15]
 

 Before the summary judgment motion was filed, the trial court had found, in ruling on the parties’
 
 in limine
 
 motions for trial, that certain requests for admissions, which had been deemed admitted against the County, were inadmissible because they were ambiguous, irrelevant, or incomplete. Nonetheless, in opposing summary judgment, Jackson relied on those same requests for admissions. The County objected to their consideration based on the
 
 in limine
 
 ruling. The trial court implicitly sustained the objection, stating that it had considered the objections and was basing its decision on evidence that was competent and admissible. We find no error in the trial court’s determination that the requests for admissions did not preclude summary judgment for the County. (See
 
 Fredericks
 
 v.
 
 Kontos Industries, Inc.
 
 (1987) 189 Cal.App.3d 272, 277 [234 Cal.Rptr. 395] [where admission is susceptible of different meanings, trial court must use its discretion to determine admission’s scope and effect];
 
 Aguimatang
 
 v.
 
 California State Lottery
 
 (1991) 234 Cal.App.3d 769, 797-798 [286 Cal.Rptr. 57] [evidentiary rulings on summary judgment are reviewed for abuse of discretion];
 
 Biljac Associates
 
 v.
 
 First Interstate Bank
 
 (1990) 218 Cal.App.3d 1410, 1419-1420 [267 Cal.Rptr. 819] [trial court need not expressly rule on each evidentiary objection in summary judgment context].)
 

 *
 

 Judge of the Municipal Court for the Long Beach Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.