Filed 12/17/24  Bealer v. County of San Diego CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ANTWOINE BEALER,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF SAN DIEGO et al.,<br><br>        Defendants and Respondents. | D083677<br><br><br><br>(Super. Ct. No. 37-2021-00030001-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Antwoine Bealer, in pro. per., for Plaintiff and Appellant.

Office of County Counsel, Michael P. Masterson and Katie Richardson for Defendants and Respondents.

Antwoine Bealer appeals from a judgment of dismissal after the sustaining of demurrer on his petition for writ of mandate seeking documents from the County of San Diego's District Attorney's Office and Sheriff's Department (collectively, the County) under the California Public Records Act (the CPRA), Gov. Code § 7920 et seq.  Bealer contends the trial court erred by concluding the doctrine of res judicata, or claim preclusion, bars his

claims. While we agree that claim preclusion may not be the correct doctrine upon which to base the analysis, we nevertheless conclude that Bealer is estopped from bringing his claims under the related doctrine of judicial estoppel. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In his petition for writ of mandate, Bealer seeks documents related to a traffic stop that occurred in the early morning hours of October 15, 2004.

That morning, a San Diego County Deputy Sheriff received a radio call at approximately 1:19 a.m., reporting that a robbery had just occurred at a gas station in Lemon Grove. The deputy began driving towards the gas station. Within seconds, he saw a vehicle heading towards him, away from the gas station. There were no other vehicles in the area. The deputy made a U-turn and began following the vehicle. He called in the license plate of the vehicle on the radio and determined the car was registered to an address in San Diego. Soon thereafter, the driver turned into a densely populated residential area. The deputy thought the action was suspicious and inconsistent with someone traveling back to San Diego, so he turned on his lights to initiate a stop.

The vehicle traveled one more block, came to a complete stop at a stop sign and then stopped in the middle of the intersection without pulling over. The deputy approached and contacted the driver, later identified as Bealer. Bealer appeared nervous and was unable to answer the deputy's questions regarding where he had been. The deputy noticed that Bealer's clothing and general physical attributes fit the description of the robber. Another deputy arrived on the scene and conducted a " 'cursory patdown' " of Bealer for weapons. He found $172 in cash in Bealer's pocket. The deputies also found a replica pistol and a knit cap with eye holes cut out in Bealer's vehicle.

2

A jury convicted Bealer of one count of robbery. The trial court found Bealer had suffered a prior serious felony and two prior strikes, and sentenced him to 30 years to life in prison. Bealer appealed. He asserted the deputy that initiated the traffic stop did so without reasonable suspicion, and the trial court erred by denying his motion to suppress evidence seized in violation of his rights under the Fourth Amendment. This court rejected those arguments, in part based on the deputy's assertion that he was responding to a call about the robbery when he encountered Bealer's vehicle in the area, and affirmed the judgment of conviction.

In 2018, Bealer filed a petition for writ of mandate seeking documents from the County under the CPRA. Specifically, he requested records from radio dispatch calls and squad car GPS data related to the 2004 traffic stop. Bealer argued he was convicted primarily based on items discovered during the stop, and asserted the requested documents were material as favorable evidence in his robbery case. The County provided Bealer with copies of the relevant document retention and destruction policies and stated, " 'if such records existed [they] would have been purged by this time.' "

In November 2020, the trial court issued a written order interpreting Bealer's requests broadly to encompass any and all records related to his criminal case, and requiring the County to comply with its statutory obligations under the CPRA. Specifically, the court ordered the sheriff's department to produce a " 'Case Evidence Summary' " identifying all evidence involved in Bealer's case, and ordered the district attorney's office to provide a privilege log "indicating each relevant responding record in its possession and the corresponding reason that the document is being withheld (or whether it is being produced)." The court further ordered the parties "to meet and confer regarding the production and narrow the records that are in

dispute." The court set an order to show cause (OSC) hearing regarding the production of documents for January 8, and stated that the County would need to "explain the specific records being produced, the records being withheld and the reasons."

The trial court continued the January hearing. On March 5, 2021, Bealer's counsel reported the parties had met and conferred, and "agreed that the production is satisfactory, so we don't need any more assistance from the court." The same day, the trial court issued a written order stating, "The issue with production of documents has been satisfied." On March 30, 2021, the parties filed a stipulation, signed by counsel for both parties, stating the "production of records was mutually satisfactory" and "March 5, 2021 constitutes the final hearing related to production of records." The stipulation stated further that Bealer would have until July 3, 2021, to file a memorandum of costs and/or motion for attorney fees. The trial court signed an associated order stating the same on April 7, 2021.

It does not appear as though Bealer ever filed a memorandum of costs or motion for attorney fees. Instead, on July 13, 2021, Bealer filed a second petition for writ of mandate under a different case number, again seeking documents from the County related to the 2004 traffic stop under the CPRA. Bealer noted that the County had produced some documents in response to the writ petition he filed in April 2018, but asserted the County continued to withhold relevant exculpatory evidence. Bealer attached two documents the County produced from its Computer Aided Dispatch (CAD) system as exhibits. He asserted the County intentionally misled him and the trial court by failing to mention that dispatch calls are recorded on the CAD system, and made general allegations regarding additional information he believed the County should have had in the CAD database.

The County filed a demurrer. It asserted the 2021 writ petition involved the same causes of action as the 2018 writ petition; the 2018 writ petition had resulted in a final determination on the merits; and the 2021 writ petition was therefore barred by the doctrine of res judicata. The trial court concluded res judicata applied, sustained the demurrer without leave to amend, and issued a judgment of dismissal in favor of the County.

Bealer filed a timely notice of appeal.

DISCUSSION

Bealer asserts the trial court erred in concluding the doctrine of res judicata applied and, thus, by sustaining the demurrer.[1]

We review an order sustaining a demurrer under a de novo standard of review but begin with the presumption that the trial court's judgment is correct. (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to affirmatively demonstrate error. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125.) As the party asserting error, Bealer "must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)

The trial court sustained the demurrer at issue here based on the doctrine of res judicata. Courts frequently use the term res judicata to refer to claim preclusion, but it encompasses both claim preclusion and issue preclusion, "two separate 'aspects' of an overarching doctrine." (*DKN*

---

[1] Bealer asserts the demurrer was not timely under Code of Civil Procedure section 430.40. We decline to address the assertion as Bealer did not raise it in the trial court.

5

*Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823 (*DKN Holdings*).)
Whether claim or issue preclusion applies in a particular case is a question of
law that we review de novo. (*Parkford Owners for a Better Community v.
Windeshausen* (2022) 81 Cal.App.5th 216, 225 (*Parkford*).)

"*Claim preclusion* 'prevents relitigation of the same cause of action in a
second suit between the same parties or parties in privity with them.'
[Citation.] Claim preclusion arises if a second suit involves (1) the same
cause of action (2) between the same parties (3) after a final judgment on the
merits in the first suit." (*DKN Holdings, supra,* 61 Cal.4th at p. 824.) "If
claim preclusion is established, it operates to bar relitigation of the claim
altogether." (*Ibid*.)

"*Issue preclusion* prohibits the relitigation of issues argued and decided
in a previous case, even if the second suit raises different causes of action."
(*DKN Holdings, supra,* 61 Cal.4th at p. 824.) "Under issue preclusion, the
prior judgment conclusively resolves an issue actually litigated and
determined in the first action." (*Ibid*.) "Issue preclusion differs from claim
preclusion in two ways. First, issue preclusion does not bar entire causes of
action. Instead, it prevents relitigation of previously decided issues. Second,
unlike claim preclusion, issue preclusion can be raised by one who was not a
party or privy in the first suit." (*Ibid*.) "In summary, issue preclusion applies
(1) after final adjudication (2) of an identical issue (3) actually litigated and
necessarily decided in the first suit and (4) asserted against one who was a
party in the first suit or one in privity with that party." (*Id*. at p. 825.)

More recently, courts have also recognized the related doctrine of
judicial estoppel. " ' "The doctrine of judicial estoppel, sometimes referred to
as the doctrine of preclusion of inconsistent positions, is invoked to prevent a
party from changing its position over the course of judicial proceedings when

such positional changes have an adverse impact on the judicial process.' ' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 (*Jackson*).) " 'Collateral estoppel bars a party from relitigating an issue of ultimate fact that a court already has adjudicated.  It deals with the finality of judgment on factual matters that were fully considered and decided.  Judicial estoppel, on the other hand, prevents inconsistent positions whether or not they have been the subject of a final judgment.' " (*Id*. at p. 182.)  " 'Judicial estoppel is designed to maintain the purity and integrity of the judicial process by preventing inconsistent positions from being asserted." (*Ibid*.)

Here, although the trial court used the general term "res judicata," it appears to have relied primarily on the doctrine of claim preclusion.  The court noted in its ruling sustaining the demurrer, "The prior decision was final and on the merits, the same causes of action are alleged, and the parties are the same."  Bealer contends the trial court erred in reaching that conclusion because there was no final judgment on the merits of the 2018 writ petition and because the causes of action in the two petitions are not identical.

As to the first issue—whether there was a final judgment or determination on the merits in relation to the first petition—the County points out that Bealer's argument is based on confusion over receipt of the final judgment of dismissal in the 2021 proceeding.  Nevertheless, it remains that there is no final judgment in the record before us in connection with the 2018 petition.  The parties *stipulated* that the production was sufficient after complying with the trial court's order to meet and confer after the County made certain disclosures, and the trial court signed off on that stipulation.  The only written ruling on the merits from the trial court is the November 2020 order, which did not address the adequacy of any production made by

7

the County thereafter. Thus, it does not appear that the stipulation between the parties constituted a final judgment or determination *by the trial court* on the merits. (See, e.g., *Parkford, supra,* 81 Cal.App.5th at p. 227 [dismissal of claim as moot was not a final judgment on the merits for the purpose of claim preclusion].)

Regardless, though, we conclude that Bealer's claims are barred by the related doctrine of judicial estoppel. Where, as here, there is no dispute that the parties are the same, the doctrines of claim preclusion and issue preclusion are more closely aligned, except that issue preclusion does not rely on a final judicial determination of the prior case or claim. (See *DKN Holdings, supra,* 61 Cal.4th at p. 825 [claim preclusion differs from issue preclusion in that claim preclusion does not bar claims against a different party not in privity].) Rather, "[i]ssue preclusion operates 'as a shield against one who was a party to the prior action to prevent' that party from relitigating an issue already settled in the previous case." (*Id.* at p. 827; *Parkford, supra,* 81 Cal.App.5th at p. 227 ["claim preclusion requires a final judgment on the merits, while issue preclusion requires a final adjudication of an issue"]; *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1564 ["for purposes of issue preclusion . . . ' "final judgment" includes *any* prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect' "].) Likewise, judicial estoppel acts as a shield by preventing a party from taking inconsistent positions in the same or different cases. (*Jackson, supra,* 60 Cal.App.4th at p. 182.)

Here, Bealer stipulated that the County's production of documents related to the 2004 traffic stop was sufficient, and the trial court issued an order based on that stipulation. Accordingly, he is precluded from now

8

asserting that the County's production of documents was not sufficient, based, at a minimum, on principles of judicial estoppel. Put simply, we conclude that the prior stipulation between Bealer and the County, and the associated order signed by the trial court, is binding as to the adequacy of the County's production of documents related to the October 15, 2004 traffic stop that led to Bealer's conviction for robbery. Bealer cannot avoid the binding nature of that stipulation by simply filing a new writ petition.[2] (See *Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672, 679 [party estopped from asserting a written agreement to arbitrate was necessary after trial court issued an arbitration order based on oral stipulation in open court that a writing was not necessary].)

Bealer asserts that the claims set forth in his 2021 writ petition are based on new facts and, thus, were not in existence at the time he filed his 2018 writ petition. Likewise, he asserts the County has a continuing duty to turn over exculpatory evidence that they continue to violate, giving rise to new claims. The record does not support these claims. Bealer relies on general statements regarding the capabilities of CAD systems, but the County provided verified discovery responses denying that the system in place at the time of the 2004 stop had such capabilities. Bealer provides no evidence to the contrary. Nor does he explain why he did not, or could not, pursue these same concerns during the meet and confer that occurred after the County's prior production of documents in early 2021.

Bealer's remaining arguments are not persuasive for many of the same reasons. He asserts the County's failure to provide exculpatory documents constitutes an injustice that warrants an exception to the general principles

---

[2] For these same reasons, we reject Bealer's assertion that the 2018 petition raises a different cause of action. The issue—the adequacy of the County's production—is the same.

of res judicata. But there is nothing in the record before us establishing such an injustice. Bealer's insistence that the County must have additional data or documentation is not sufficient to establish such an injustice, particularly considering the prior stipulation between the parties following a meet and confer, and the County's verified discovery responses. Bealer similarly asserts the outcome is unduly harsh to him as an in propria persona litigant. But Bealer did have legal representation when he stipulated that the County's 2021 production was sufficient. Regardless, the leniency afforded to in propria persona litigants in construing formal pleadings does not extend to permit serial litigation on the same issue.

Finally, Bealer asserts, in conclusory fashion, that he should be given a chance to amend his petition. But he makes no argument or showing establishing that he could amend the petition to overcome the demurrer. (See *Crestwood Behavioral Health, Inc. v. Baass* (2023) 91 Cal.App.5th 1, 16 [plaintiff bears burden of proving defect leading to demurrer can be cured by amendment].)

DISPOSITION

The judgment is affirmed. Parties to bear their own costs on appeal.

KELETY, J.

WE CONCUR:

DO, Acting P. J.

RUBIN, J.

10