[Civ. No. 28851.    Second Dist., Div. Three.    May 11, 1965.]

STERLING W. CARMICHAEL, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Harold L. Greene for Petitioner.

Everett A. Corten, Eward A. Sarkisian and David Marmor for Respondents.

McMURRAY, J. pro tem.*—Petitioner seeks annulment of the respondent commission's order denying reconsideration of its order of August 20, 1964, which found no good cause had been shown to rescind its order approving compromise and release of petitioner's claim issued on June 14, 1963.

█ Petitioner injured his back on December 13, 1962. On June 3, 1963, the parties, acting through counsel, executed a compromise and release which recited among other things ". . . that [petitioner] sustained an injury arising out of and in the course of his employment as follows: Injured back while lifting side gate on truck . . ." and that "[t]he employee's present disability is in dispute . . ." and that "[t]he parties hereby agree to settle any and all claims on account of said injury by the payment of the sum of $1,500.00 . . ." in addition to prior payment of $771.70 temporary disability indemnity and $362.02 paid for medical expenses by employer.

The release and compromise was on an Industrial Accident Commission form and the eleventh paragraph thereof reads: "Upon approval of this Compromise Agreement by the Industrial Accident Commission, a panel thereof, a Commissioner, or a Referee, and payment in accordance with the provisions hereof, said employee releases and forever discharges said employer and insurance carrier from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury, including any and all liability of said employer and said insurance carrier and each of them to the dependents, heirs, executors, representatives, administrators or assigns of said employee."

Petitioner sought an order to set aside the foregoing compromise and release and a hearing was held on that question on June 10, 1964. Petitioner there attempted to show that the compromise and release was obtained by fraud or, in the alternative, by reason of mistake of fact. No evidence of fraud appears in the record.

The alleged mistake of fact urged by petitioner was that the two doctors furnished by the employer's insurer told him that he was able to return to work and that he had completely recovered from his injury and that the residual pain he said he had in his legs was in his mind.

Sometime later, since the pain in his legs persisted, petitioner returned to the same office in which one of the above doctors had practiced and saw another doctor. This doctor reexamined petitioner and diagnosed his condition as ". . . an unstable

---

*Assigned by the Chairman of the Judicial Council.

lumbo-sacral junction with nerve root impingement due to a ruptured intervertebral disc and spina bifida occulta.'' This doctor further stated that this condition had existed when petitioner was examined by another doctor on June 3, 1963. This condition was surgically treated by excision of the disc and removal of a fibrous cartilaginous mass in conjunction with the posterior spinous processes and ligamentum flavum.

At the time of signing the release petitioner knew of his right to obtain independent medical evaluation of his condition, but decided against it and elected to rely on the opinions of the doctors furnished by employer's insurer.

Petitioner finished 12 grades in school in a precollege academic course and admitted that he read the release before signing it. He further admitted that before signing the release he had been represented by counsel since early in the case and that the settlement went through his attorney after discussion of the medical reports.

Petitioner had tried to work for another employer in April of 1963, and had worked there for a short time when he quit because his back bothered him. This was prior to the release by some weeks.

At the time of signing the release petitioner was aware of inconsistencies between his existing complaints and histories in the medical reports and discussed these with his attorney. He had doubts in his mind when he signed the release, he had no direct contact with the insurer relative to the actual settlement nor did he have any discussion with the doctors regarding such settlement.

At the time he entered into the compromise and release he had an offer of a job as a salesman. His wife was expecting a baby and the disability payments were not adequate to cover his current expenses.

The petition here consists of earnest argument but no citation of authority and no discussion of the fact finding powers of the respondent commission, except to complain of its final action in denying reconsideration of the order approving compromise and release. Respondent cites several cases relating to the allegations and proofs necessary to establish fraud and denies that misdiagnosis constitutes mistake of fact contending, instead, that medicine is an art, not an exact science and that mere error in judgment does not create liability. Respondents also properly contend that the commission's findings of fact are not subject to review where it cannot be said that no reasonable man could reach the conclusion that

the commission reached. Several cases reported in various commission reports are cited.

Petitioner in his reply to answer to petition for writ of review cites more cases in support of his petition, most of which are here inapposite, and, finally, in the last line of this last brief cites the crucial case of *Casey* v. *Proctor,* 59 Cal.2d 97 [28 Cal.Rptr. 307, 378 P.2d 579].

Certainly, under the facts here shown, it would have been within the power of the commission to find that petitioner was entitled to rescind the compromise and release on the ground of mutual mistake of fact, if it also had found that petitioner's mistake was not due to his own neglect (*Casey* v. *Proctor, supra,* 59 Cal.2d 97, 103; see also 71 A.L.R.2d 82), but it was also within the commission's power to determine under the facts that it was petitioner's own choice to sign the release at a time when he knew, or should have known, that there was a possibility that further complications might occur from his injury.

Certainly, such an inference is supportable in the instant record and it has been said, ''If the findings of the Industrial Accident Commission are supported by inferences which may fairly be drawn from evidence, even though the evidence is susceptible of opposing inferences, the reviewing court will not disturb the award. . . .'' (*Riskin* v. *Industrial Acc. Com.,* 23 Cal.2d 248, 254 [144 P.2d 16].) ▉ The petitioner read the release, discussed it with his attorney, did not discuss it with the employer or the employer's insurer or doctors, knew of, but rejected, his right to independent medical examination and advice, knew that his legs pained, knew that about a month before signing the release he had been unable to work and yet nevertheless signed the release and, after its approval by the commission accepted the money tendered thereunder.

The determination that petitioner consciously released the employer from any further liability that might arise from the injury is well grounded.

In considering the effect of *Casey* v. *Proctor, supra,* 59 Cal.2d 97, upon this case it should be noted that the holding therein amounts to a declaration that whether or not a release shall apply to unknown injuries is a question of fact to be determined by the trier of fact, whether under the provisions of Civil Code, section 1542, or under the common law.

Applying the elements considered effective in *Casey* v. *Proctor, supra,* at page 113, to the instant case it appears that respondent commission was justified in its action here. The

release here was "knowingly" made. Petitioner with a high school education read the release, discussed it with his attorney and, although somewhat doubting the validity of his medical advice, signed the release. The amount of the consideration compared with the risk of the existence of unknown injuries is not so disproportionate as to require a setting aside of the release. For almost six months there was bargaining and negotiation which culminated in the release. The liability of the employer was established. The subject of personal injuries was discussed and was the entire subject covered by the compromise and release, furthermore the discussions leading to settlement were between counsel for the petitioner and the employer with no suggestion of overreaching or any impropriety. The contention that the possibility of further injuries was in fact unknown at the time the release was executed was rejected as unreasonable by the commission. This factual determination is not arbitrary in the instant case.

It appears that petitioner falls within language quoted in *Casey* v. *Proctor, supra,* 59 Cal.2d 97, at page 112: " 'We would not be understood as holding . . . that it is not within one's competence to say "I may have serious injuries I know nothing about. As to them I will take my chances." This, one may do. He may, if he wishes, release his rights and assume the risk of future disablement for $1.00 "and other good and valuable consideration," or $50, or, indeed, an old beaver hat. In other words, it is possible that a reasonable, intelligent person, in full possession of all his faculties, and with knowledge that he may have serious injuries, will release a tortfeasor from all liability in return for a trifling sum of money. If such has in truth been the intention and the agreement we will not disturb the parties.' "

The order is affirmed.

Ford, Acting P. J., and Kaus, J., concurred.