[Civ. No. 67187. Second Dist., Div. Four. Sept. 28, 1983.]

JERRY DRAPER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD
and DEPARTMENT OF CORRECTIONS, Respondents.

**COUNSEL**

Phillip N. Bruce for Petitioner.

Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva and James A. Sibley for Respondents.

**OPINION**

**WOODS, P. J.**—Petitioner, Jerry Draper, seeks review and annulment of the Workers' Compensation Appeals Board's decision after reconsideration finding that petitioner did not sustain new and further permanent disability subsequent to a stipulated award.[1]

Petitioner and applicant, Jerry Draper, sustained an admitted industrial injury to his heart due to his employment with respondent, Department of Corrections, over the period December 9, 1963, to July 10, 1975.

The report of Dr. Travis Winsor dated November 4, 1975, stated that subsequent to applicant's two heart attacks of June 27, 1974, and July 10, 1975, the applicant "has become permanently disabled from working." On December 15, 1975, an informal disability rating issued giving applicant a 100 percent permanent disability rating based on Dr. Winsor's report. On January 27, 1976, Dr. Winsor stated: "It is possible that this patient will naturally regain some strength and then possibly perform some sedentary activity. He would fall into category 8 [disability resulting in limitation to sedentary work]."

At the hearing on March 24, 1976, the parties entered into stipulated facts, including that the applicant's condition became permanent and stationary on September 23, 1975, and "[t]he injury caused permanent disability of 90 percent, . . ."

---

[1]We originally denied the petition for writ of review on the ground that petitioner had failed to present sufficient facts to justify the relief sought. The Supreme Court thereafter granted petitioner's petition for hearing and directed this court to issue a writ of review.

The applicant filed a petition to reopen the matter on July 20, 1979, on the ground that he had sustained new and further disability since the issuance of the original award. The issue of reopening the case was submitted based on applicant's testimony of June 8, 1982, and medical reports of Kaiser Hospital, Dr. Julien H. Isaacs, and Dr. Travis Winsor.

Dr. Travis Winsor reported on February 15, 1980, that the applicant had increased pain in his chest since 1975, more shortness of breath on exercise, and numbness of the feet and legs below the knee. Dr. Winsor concluded that the applicant "has become completely disabled for any type of job . . . ."

Dr. Julien Isaacs stated in his reports of February 20, 1980 and April 15, 1980, that the applicant was precluded from gainful employment due to his cardiac condition but did not comment on the applicant's condition in 1976.

The applicant testified at trial that he believed his condition had worsened since 1976 because he experiences symptoms of shortness of breath, dizzy spells, chest pains, and numbness in his legs more often than he did in 1976. He underwent a coronary by-pass on March 11, 1977, because his angina was constant at that time, and he required nitroglycerine every half hour.

The workers' compensation judge denied the petition to reopen on the ground that medical evidence of applicant's total disability existed prior to the stipulation to 90 percent permanent disability and therefore applicant had failed to sustain his burden of proof of increased disability. The board affirmed the judge's decision as to the permanent disability issue.[2]

Labor Code section 5410[3] allows the reopening of a prior findings and award of the Workers' Compensation Appeals Board for "new and further disability" upon the filing of a petition of the injured employee within five years of the date of injury. (*Aliano* v. *Workers' Comp. Appeals Bd.* (1979) 100 Cal.App.3d 341, 365 [161 Cal.Rptr. 190].)

The court in *Nicky Blair's Restaurant* v. *Workers' Comp. Appeals Bd.* (1980) 109 Cal.App.3d 941, 955 [167 Cal.Rptr. 516], adopted the definition that " '[t]he term "new and further disability" has been defined to mean disability which results from some demonstrable change in an employee's condition.' " (Quoting 1 Herlick, Cal. Workers' Compensation Law Hand-

---

[2]On November 5, 1982, respondent board issued an opinion granting reconsideration which awarded petitioner additional temporary disability but declined to increase his permanent disability.

[3]Hereinafter all references are to the Labor Code unless otherwise specified.

book (2 ed. 1978) § 14.5.) The court concluded that "if [applicant's] condition is unchanged from the time of the original decision . . . there is no 'new and further disability' within the meaning of section 5410 to permit reopening of the case." (*Nicky Blair's Restaurant* v. *Workers' Comp. Appeals Bd., supra,* at p. 955.)

The court in *Nicky Blair's Restaurant* also pointed out that "good cause" is a separate and distinct ground for reopening.

"The principle of reopening for 'good cause' does not permit an attempt to simply relitigate the original award. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

" 'Through many court decisions it has become well settled that, in order to constitute "good cause" for reopening, new evidence (a) must present some good ground, not previously known to the Appeals Board, which renders the original award inequitable, (b) must be more than merely cumulative or a restatement of the original evidence or contentions, and (c) must be accompanied by a showing that such evidence could not with reasonable diligence have been discovered and produced at the original hearing.' (1 Hanna, [Cal. Law of Employee Injuries and Workmen's Compensation (2d rev.ed. 1980)] § 9.02[2][d]; see *Merritt-Chapman & Scott Corp.* v. *Indus. A. C.* (1936) 6 Cal.2d 314 . . .; *Clendaniel* v. *Ind. Acc. Com.* (1941) 17 Cal.2d 659 . . . .)

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"[T]he concepts of 'good cause' and 'new and further disability,' in application to a request to reopen these concepts may intertwine. 'Good cause' includes 'new and further disability.' (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973), *supra,* § 12.12.) 'New and further disability' may help establish 'good cause.' (See *Aliano, supra,* 100 Cal.App.3d at p. 366.) For example, the change or lack thereof in the injured's condition may demonstrate his condition was originally misdiagnosed and therefor[e] warrant a total reevaluation of the injured's status. (*Ibid.*)" (*Nicky Blair's Restaurant* v. *Workers' Comp. Appeals Bd., supra,* 109 Cal.App.3d at pp. 956-957.)

■ Section 5000 allows the parties to compromise "any liability which is claimed to exist [under Div. Four of the Lab. Code] on account of [industrial] injury . . . ." Such a settlement is not valid until approved by the workers' compensation judge or board. (*Raischell & Cottrell, Inc.* v. *Workmen's Comp. App. Bd.* (1967) 249 Cal.App.2d 991 [58 Cal.Rptr. 159].)

Section 5001 provides: "Compensation is the measure of the responsibility which the employer has assumed for injuries or deaths which occur to employees in his employment when subject to this division. No release of liability or compromise agreement is valid unless it is approved by the appeals board or referee."

Once the settlement is approved, however, it can only be set aside for good cause upon a petition to reopen demonstrating that the agreement was the result of fraud, mistake, duress, or undue influence. (*Silva* v. *Industrial Acc. Com.* (1924) 68 Cal.App. 510, 515 [229 P. 870].) As noted by Hanna: "The mere fact of [a permanent disability] increase or that post-settlement disability has exceeded expectations is not a ground for setting aside an approval order. . . . [¶] True mistake of fact has not been shown where the agreement was entered into knowingly and as a calculated risk, i.e., the parties knew or should have known that there was a possibility of improvement or deterioration of the condition resulting from injury." (1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1980) § 8.05[4][e], pp. 8–33—8–34, citing *Carmichael* v. *Industrial Acc. Com.* (1965) 234 Cal.App.2d 311 [44 Cal.Rptr. 470].)

■ Here, however, the parties did not enter into a compromise and release agreement but instead stipulated to the amount of permanent disability which they sought to have the workers' compensation judge accept as accurately reflecting the permanent disability status of the applicant at that time. The distinguishing feature being that the parties retained the right to reopen the case on a showing of a change of disability.

Section 5803 provides: "The appeals board has continuing jurisdiction over all its orders, decisions, and awards made and entered under the provisions of this division and the decisions and orders of the rehabilitation unit established under Section 139.5. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any order, decision, or award, good cause appearing therefor.

"This power includes the right to review, grant or regrant, diminish, increase, or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor the award was made has either recurred, increased, diminished, or terminated."

■ If the stipulation does not adequately reflect the disability of the applicant, it should not be accepted by the workers' compensation judge as the basis for his or her award. Section 5702 provides: "The parties to a

controversy may stipulate the facts relative thereto in writing and file such stipulation with the appeals board. The appeals board may thereupon make its findings and award based upon such stipulation, or may set the matter down for hearing and take further testimony or make the further investigation necessary to enable it to determine the matter in controversy."

In the case before us, it is now contended that the board could have reasonably inferred from the medical evidence introduced prior to the stipulated findings and award that applicant's disability was 100 percent based on Dr. Winsor's November 4, 1975, report which was informally rated at 100 percent disability. The board did not so infer, however. The board issued a finding and award declaring the applicant's permanent disability to be 90 percent.

There are many reasons which the workers' compensation judge may have reached this decision. Certainly the fact that this percentage of disability was proposed by the parties is a factor but as we have shown the board was not compelled to accept this proposal.[4] The board and the parties may have been influenced by Dr. Winsor's subsequent report of January 27, 1976, which stated that "it is possible that this patient will naturally regain some strength and then possibly perform some sedentary activity," indicating a possible 70 percent permanent disability rating. Dr. Winsor's use of possibilities rather than medical probabilities was highly speculative. Such a report would not constitute substantial evidence in support of a 70 percent permanent disability award, but was some evidence that either the applicant's condition was not permanent and stationary or that his final evaluation appeared to be less than 100 percent disability. The Workers' Compensation Appeals Board had the authority to receive additional evidence on this point but instead choose to issue an award setting the disability at 90 percent. Having done so, they cannot now go behind that award and speculate as to what other determination might have been made at that time.

The board found that the applicant had good cause to reopen this matter and awarded additional temporary disability for periods subsequent to March 23, 1976.

This applicant has undergone heart surgery since his award issued and testified to various changes in his condition and increased symptoms follow-

---

[4]The Workers' Compensation Appeals Board does not exceed its authority in making a finding contrary to a stipulation, because of its authority pursuant to section 5702 to take further testimony and make a further investigation. (*Pacific Indemnity Co.* v. *Ind. Acc. Com.* (1948) 86 Cal.App.2d 726, 735 [195 P.2d 919]; *Turner Gas Co.* v. *Workmen's Comp. Appeals Bd.* (1975) 47 Cal.App.3d 286, 290 [120 Cal.Rptr. 663].)

ing that surgery. Dr. Winsor's report of February 15, 1980, supported these contentions and they were otherwise nonrebutted. The fact that the applicant is now 100 percent disabled is not disputed.

Based on the foregoing, we conclude that the board abused its discretion in determining that the applicant failed to establish new and further permanent disability. The decision of the board that the applicant did not sustain this burden is reversed and the cause remanded. The board is instructed to issue a new finding and award consistent with the views expressed in this opinion.

Kingsley, J., and Schneider, J.,* concurred.

The petition of respondent Department of Corrections for a hearing by the Supreme Court was denied November 30, 1983.

---

*Assigned by the Chairperson of the Judicial Council.