**ALAMEDA PRODUCE MARKET, INC., Plaintiff,**

v.

**AIR NAIL COMPANY, INC., et al., Defendants.**

Alameda Produce Market, Inc., Plaintiff,

v.

Air Nail Co., Inc. and Bruce Massman and Martin Massman, Defendants.

Bankruptcy No. 2:05–CV–1177. Adversary No. 03–3202–MBM.

United States District Court, W.D. Pennsylvania.

Aug. 25, 2006.

Paula A. Schmeck, Thorp Reed & Armstrong, LLP, Pittsburgh, PA, for Plaintiff.

John M. Steiner, Alisa N. Carr, Leech, Tishman, Fuscaldo & Lampl, Lisa K. Stauffer, Neil F. Siegel, Cohen & Grigsby, Pittsburgh, PA, for Defendants.

### *OPINION*

HARDIMAN, District Judge.

### I. Introduction

This bankruptcy appeal involves a real estate dispute in a non-core matter. Plaintiff Alameda Produce Market, Inc. (Alameda) claims that Defendants Bruce and Martin Massman (Massmans) breached contracts with Alameda when they leased property to Debtor Air Nail Company, Inc. (Air Nail). The Bankruptcy Court rejected Alameda's arguments and granted the Massmans' motion for summary judgment in a Memorandum Opinion dated August 8, 2005. For the reasons that follow, the Court will affirm the Bankruptcy Court's thorough findings and conclusions in all respects.

### II. Jurisdiction

The Court has jurisdiction over this appeal from the Bankruptcy Court's Order pursuant to 28 U.S.C. § 158.

### III. Procedural History

On July 18, 2003 Air Nail filed a petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Plaintiff Alameda initiated an adversary proceeding in No-

vember 2003 against Debtor Air Nail, which later included Defendants Bruce and Martin Massman. The Massmans filed a motion for summary judgment which the Bankruptcy Court granted as to all eight counts of Alameda's complaint and on all four counts of the Massmans' counterclaims. Because the claims constitute non-core matters, the Bankruptcy Court's Memorandum Opinion constitutes Proposed Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 9022. *Copelin v. Spirco, Inc.,* 182 F.3d 174, 179 (3d Cir.1999).

Alameda timely filed its notice of appeal on August 23, 2005. On December 12, 2005, the parties filed a stipulation designating pertinent record excerpts on appeal. After the issues were fully briefed, the Court held oral argument on March 2, 2006 and the matter is ripe for adjudication.

## IV. Standard of Review

In a non-core proceeding, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1); Fed. R. Bankr.P. 9033(d) *In re Mintze,* 434 F.3d 222 (3d Cir.2006).

## V. Facts

For purposes of its Objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law, Alameda adopts and incorporates by reference the Statement of Facts as set forth in the Bankruptcy Court's Memorandum Opinion. Accordingly, the Court makes the following Findings of Fact, which track closely those found by the Bankruptcy Court.

On August 26, 2002, Alameda agreed to buy, and the Massmans agreed to sell, commercial real property located at 8685 Bowers Avenue, South Gate, California (Realty). The terms of the purchase and sale agreement consist of an August 2, 2002 document drafted by Alameda's predecessor-in-interest, as modified by an August 23, 2002 counter-offer drafted by the Massmans, as modified by additional letters in October 2002 (collectively, Purchase Agreement). Pursuant to the Purchase Agreement and the parties' escrow instructions, Alameda paid a deposit of $100,000 for the Realty ($100,000 Deposit) to Commerce Escrow Company (Escrow Holder), which continues to hold the $100,000 Deposit.

On or about December 27, 2002, the Massmans declared that the Purchase Agreement was terminated, apparently claiming that Alameda had failed to timely sign a lease for the Realty as required by the Purchase Agreement. Despite Alameda's protestations that the Purchase Agreement was never terminated, the Massmans refused to perform.

Within a few weeks after their deal with Alameda fell through, on January 15, 2003, the Massmans executed a lease with Debtor Air Nail (Air Nail Lease), pursuant to which the Massmans leased the Realty to Air Nail for ten years and three months. Attached as an addendum to the Air Nail Lease is a Right of First Refusal to Purchase (Right of First Refusal), wherein the Massmans granted to Air Nail the right, upon twenty days' notice from the Massmans, to match any offer to purchase the Realty during the term of the Air Nail Lease.

Less than a month after the execution of the Air Nail Lease, Alameda sued the

Massmans and Air Nail in California. *See Alameda Produce Market, Inc. v. Martin Massman and Bruce Massman, et al.* (Los Angeles County Superior Court, Case No. BC 290142) (California Action). The California Action was stayed as to Air Nail after it filed its Chapter 11 petition on July 18, 2003, however. Accordingly, in November 2003 Alameda initiated the instant adversary proceeding against Air Nail which sought, *inter alia,* a declaration that the Air Nail Lease was invalid.

On March 1, 2004, the Massmans and Alameda settled the California Action by entering into a Settlement Agreement and Mutual Release (Settlement Agreement) that allowed Alameda to purchase the Realty subject to Air Nail's Right of First Refusal. Paragraph 1 of the Settlement Agreement states:

> [s]ubject to whatever rights Air Nail has under the Right of First Refusal, the Massmans shall sell the Property to Alameda for a cash purchase price of $6.5 million ("Purchase Price"), in accordance with the terms and conditions of the Purchase Agreement (which shall be deemed in full force and effect), as modified by that certain Amendment No. 3 to Purchase Agreement being executed concurrently herewith.

Amendment No. 3 to the Purchase Agreement (Amendment No. 3) contains several provisions germane to this appeal. First, paragraph AM 3–1 states that the Closing Date for the sale of the Property is May 26, 2004, time being of the essence. If, however, the closing does not occur by May 26, 2004 through no fault of the Massmans, then the Purchase Agreement automatically terminates, the Escrow Holder is directed to pay the $100,000 Deposit, plus interest, to the Massmans as liquidated damages, and Alameda is required to turn over all building plans. Paragraph AM 3–4 provides that Alameda's obligation to purchase the property is conditioned upon an updated title commitment showing only certain permitted title exceptions, which included, *inter alia,* the Air Nail Lease and Air Nail Bankruptcy, the California Action, and any title exceptions caused by Alameda. Paragraph AM 3–5 demonstrates that the transaction was "as is, where is," without any financing contingency: "Buyer acknowledges and agrees that . . . all of the contingencies to Closing set forth in Paragraph 9 of the Purchase Agreement have been satisfied or waived, and therefore are deemed approved." Paragraph AM 3–9 addresses the Air Nail Lease, and states that it will be assigned to Alameda if it is still in existence when the Agreement is executed. Paragraph AM 3–11 states that the $100,000 Deposit constitutes the liquidated damages amount in accordance with paragraph 21 of the Purchase Agreement. Finally, paragraph AM 3–12 provides that Amendment No. 3 controls in the event of any conflict with the Purchase Agreement.

In addition to the aforementioned provisions of Amendment No. 3, several provisions of the Purchase Agreement are germane to this appeal. Section 9.3 of the Purchase Agreement states that should Alameda disapprove an item, the Massmans have the right, within 10 days notice of the disapproval, to elect to cure the disapproved item. If the Massmans fail to notify Alameda of their election to cure the disapproved item, Alameda must either accept title to the Realty subject to the disapproved item or terminate the transaction. In addition, the Purchase Agreement at section 16 contains a fee shifting provision and at section 21 establishes a liquidated damages amount of $100,000.

Finally, like the Purchase Agreement, the Settlement Agreement itself contains a fee-shifting provision, as well as an integration clause and requires that any

amendment thereto be in writing. Agreement at ¶¶ 10, 14, 15. The Settlement Agreement also contains comprehensive releases by and between Alameda and the Massmans, except for obligations and covenants arising from the Settlement Agreement, the Purchase Agreement, or Amendment No. 3.

Some four days after they agreed to sell the Realty to Alameda pursuant to the Settlement Agreement, the Massmans issued a notice of sale to Air Nail as required by the Right of First Refusal. Instead of exercising its Right of First Refusal, however, Air Nail filed a Notice of Pendency of Action (*Lis Pendens*) with the Los Angeles County Recorder's Office on or about April 5, 2004. The action that precipitated the *Lis Pendens* is the adversary proceeding on appeal before this Court, which remains today a cloud on title to the Realty.

On May 20, 2004, Alameda wrote to the Escrow Holder pursuant to section 9.3 of the Purchase Agreement, noting its disapproval of the *Lis Pendens*. Nevertheless, Alameda never undertook to expunge the *Lis Pendens* in the Bankruptcy Court prior to the established closing date of May 26, 2004. Alameda contends that it wished to obtain relief from the automatic stay to request the California Superior Court to expunge the *Lis Pendens*, but failed to do so because the Massmans allegedly promised to seek relief from the automatic stay on Alameda's behalf in conjunction with the Massmans' own application for relief from stay to pursue Air Nail for rent delinquencies.[1] At a hearing in the Bankruptcy Court on May 18, 2004, however, counsel for the Massmans reported that its motion for relief from stay was resolved and the issue of relief from stay to pursue expungement of the *Lis Pendens* was never addressed despite the fact that Alameda's counsel was present at the hearing.

Alameda failed to close on the purchase of the Realty on May 26, 2004 as required by Amendment No. 3. Accordingly, by letter dated May 27, 2004 the Massmans wrote to the Escrow Holder that the Purchase Agreement had automatically terminated and requested the $100,000 Deposit. The Escrow Holder refused to release the Deposit, presumably because of the ongoing dispute between Alameda and the Massmans regarding the termination of the Purchase Agreement. On June 10, 2004, the Massmans sued Alameda in California state court to enforce the Settlement Agreement, the Purchase Agreement, and Amendment No. 3. The California state court stayed the case because of the pendency of Air Nail's bankruptcy, however.

On or about February 14, 2005, Alameda amended its original complaint in this adversary proceeding by adding the Massmans as Defendants. Counts 1–8 of Alameda's amended complaint pertain to the Massmans and may be summarized as follows:

(a) Counts 1 and 2 are breach of contract claims that seek specific performance and money damages, respectively. Alameda contends that the Massmans breached the contracts by failing to: (i) clear the *Lis Pendens*, which is a cloud on title to the Realty; (ii) pursue stay relief on Alameda's behalf so that it could seek expungement of the *Lis Pendens*; (iii) promptly and fully cooperate with Alameda in expunging the *Lis Pendens* as required by Settlement Agreement ¶ 5(b)(i); and (iv) close on the transaction. Alameda also contends that it is not in breach of any of its contracts with the Massmans and even had it been in breach, the Purchase Agree-

---

1. The Massmans deny that they agreed to obtain relief from stay on Alameda's behalf.

ment is still effective because the Massmans have not provided Alameda notice and an opportunity to cure.

(b) In Counts 3 and 5, Alameda seeks a declaration that the Purchase Agreement has not terminated.

(c) In Counts 4 and 6, Alameda seeks rescission of Amendment No. 3 and the Settlement Agreement so that it may proceed against the Massmans under the Purchase Agreement in its unamended form. Alameda claims that the Massmans breached the Purchase Agreement prior to its amendment, and that such breach entitles Alameda to either specific performance (Count 4) or money damages (Count 6).

(d) In Count 7, Alameda sues the Massmans for breach of the implied covenant of good faith and fair dealing.

(e) In Count 8, Alameda claims that the Massmans falsely represented that they would: (i) expunge the *Lis Pendens;* (ii) seek and obtain relief from the automatic stay so Alameda could expunge the *Lis Pendens;* (iii) perform timely and in good faith their contractual obligations to Alameda; and (iv) perform environmental work so that Alameda could lease the Realty.

In their counterclaim, the Massmans contend that the Purchase Agreement has terminated, and that Alameda breached the contracts by failing to close on May 26, 2004. As relief, the Massmans seek: (a) turnover of the $100,000 Deposit as liquidated damages (Counterclaim 1); (b) payment of attorneys' fees and court costs (Counterclaim 2); (c) a declaration that the Purchase Agreement has terminated, thereby leaving Alameda without any further rights either under the Purchase Agreement or in the Realty (Counterclaim 3); and (d) return of all building plans for the Realty (Counterclaim 4).

## VI. The Bankruptcy Court's Proposed Conclusions of Law

With respect to Alameda's Count 1, the Bankruptcy Court found that Alameda can no longer obtain specific performance regarding the Purchase Agreement, as amended by ¶ AM3–1 of Amendment No. 3, because it automatically terminated, leaving Alameda without any further rights under the Purchase Agreement. As for specific performance regarding the Settlement Agreement, the only provision contained therein that the Massmans conceivably could have violated was ¶ 5(b)(iii)(B)-(D), but specific performance thereon would now make little sense as a remedy for Alameda given that it can no longer purchase the Realty pursuant to the amended Purchase Agreement. Similarly, the Bankruptcy Court concluded that the Massmans were entitled to judgment on Count 2 (breach of contract) because had the Massmans breached ¶ 5(b)(iii)(B)-(D) of the Settlement Agreement, Alameda could not have suffered any damages as a result of such alleged breach because it can no longer purchase the Realty pursuant to the amended Purchase Agreement.

With respect to Alameda's Count 3 (declaratory relief), the Bankruptcy Court found that claim moot in light of its finding that the amended Purchase Agreement automatically terminated.

In Counts 4–6, Alameda seeks to rescind Amendment No. 3 and the Settlement Agreement so that it may proceed against the Massmans under the Purchase Agreement in its unamended form. As the Bankruptcy Court correctly noted, however, "[c]ontract rescission, as a matter of law, is not permitted for a minor, trivial, technical, or unimportant breach, or for a breach which is collateral, or incidental and subordinate, to the real undertaking or main purpose of the contract." The

Bankruptcy Court found that rescission was inappropriate because even if the Massmans had breached ¶ 5(b)(iii)(B)-(D) of the Settlement Agreement, it was minor because Alameda was not damaged by said breach. Accordingly, the Bankruptcy Court found that the Massmans were entitled to summary judgment on Counts 4–6.

The Bankruptcy Court found that Count 7 (breach of the implied covenant of good faith and fair dealing) failed because it obliged the Massmans neither to clear the *Lis Pendens* from the title nor to obtain (or pursue) stay relief on Alameda's behalf to facilitate its expungement of the *Lis Pendens*. Moreover, the Court found that the Massmans did not impair Alameda's ability to close on the deal, even assuming that the Massmans contributed to the presence of the *Lis Pendens*, because the *Lis Pendens* was a permitted title defect.

Finally, with respect to Alameda's Count 8 (fraud), that claim was barred by ¶ 2 of the Settlement Agreement under which the Massmans were released.

Regarding the Massmans' counterclaims, the Bankruptcy Court found that Counterclaim 3 (request for declaratory relief that (a) the Purchase Agreement has terminated, (b) Alameda consequently no longer has any further rights under the Purchase Agreement, and (c) Alameda consequently no longer has any further rights in or to the Realty) had essentially been rendered moot. The Bankruptcy Court so found because it had already determined that the amended Purchase Agreement automatically terminated and Alameda no longer had any rights in the Realty. Thus, the Massmans were entitled to summary judgment on Counterclaim 3 because of the Bankruptcy Court's legal rulings in Alameda's case-in-chief.

With respect to Counterclaim 1, the Bankruptcy Court held that the Massmans are entitled to return of the $100,000 Deposit, with interest, not only because Alameda failed to close by May 26, 2004 and the Purchase Agreement automatically terminated. Rather, the Bankruptcy Court relied on ¶ AM 3–1 of the Amendment No. 3 and ¶ 21 of the Purchase Agreement, which required the Escrow Holder to pay the $100,000 Deposit (with interest) as liquidated damages if Alameda breaches the Purchase Agreement. Given the foregoing contractual language, the Bankruptcy Court determined that the Massmans are entitled to a turnover of the $100,000 Deposit (with interest) as liquidated damages because Alameda breached the Purchase Agreement.

The Bankruptcy Court also found that the Massmans are entitled to summary judgment on Counterclaim 4, which sought return of the building plans delivered to Alameda pursuant to ¶ AM 3–1 of Amendment No. 3.

Finally, the Bankruptcy Court found that Settlement Agreement ¶ 10 and Purchase Agreement ¶ 16 unambiguously provide that, as between Alameda and the Massmans, the prevailing party in this litigation shall be entitled to indemnification from the other for reasonable attorneys' fees. Because the Bankruptcy Court found in favor of the Massmans on all claims, it held that they are entitled to summary judgment on Counterclaim 2, in which they seek counsel fees.

## VII. Analysis

### A. Specific Performance Is Not An Available Remedy

 Under California law, a party seeking specific performance of a contract must have itself performed in accordance with the terms of the contract. "A suit for specific performance cannot be enforced in favor of one who has not fully and fairly performed all conditions precedent on his

part to be performed except where his failure is only partial and either immaterial or capable of being fully compensated." *Pitt v. Mallalieu*, 85 Cal.App.2d 77, 192 P.2d 24, 27 (1948). In this case, Alameda's failure to close on the Realty was not immaterial, considering that the sale of the Property was the entire purpose of the contract. Nor can the Massmans be fully compensated, because the contract provided that time was of the essence. Thus, in accordance with *Mallalieu*, Alameda cannot maintain a cause of action for specific performance.

The decision in *Mallalieu* is particularly instructive because there the court dealt with facts nearly identical to those at issue here. The parties entered into a contract for the sale of property and the buyer agreed to deposit the purchase price in escrow by a certain date. *Id.* at 26. When it became clear to the buyer that the seller would be unable to convey marketable title to the property, the buyer did not deposit the funds. The contract at issue recognized a variety of possible title encumbrances, and included the following provision: "That in the event the title to said property shall not prove merchantable and said seller shall not perfect, or [be] able to perfect, the same within a reasonable time from this date, the purchaser shall have the option of demanding and receiving back said deposit and shall be released from all obligation hereunder." *Id.* at 27.

The *Mallalieu* court rejected the argument that the plaintiff's obligation to perform depended on the condition precedent of good title:

> Plaintiff contends that he was excused from nonperformance by reason of the clouded condition of defendant's title. But while the agreement implies that defendant's title might not prove merchantable and she might not perfect it

within a reasonable time, the remedy for plaintiff in such event is provided by the agreement's provision 'that the purchaser shall have the option of demanding back said deposit and shall be released from all obligation hereunder.' The requirement that plaintiff deposit the total purchase price in escrow was not conditional but was absolute. His failure to make the deposit within the 90 days after the agreement was a breach of it and terminated his rights.

*Id.* at 27 (internal citations omitted). Therefore, the "fact that there was an encumbrance against defendant's title which she was not able to remove within the time fixed for performance did not relieve the vendee from making a tender of the purchase price and demand of performance as a condition for his action." *Id.* at 27 (internal citations omitted).

Like *Mallalieu,* here Amendment 3–4 of the Purchase Agreement clearly conditions Alameda's obligation to close on an updated title commitment showing only limited exceptions. Moreover, the removal of the obligation to buy does not entitle the buyer to then sue for specific performance without itself having tendered performance by the required date. Instead, Amendment No. 3 gives Alameda two options: to close notwithstanding the title exception or to walk away from the deal. *See* Amendment No. 3 at ¶ 9.3 ("buyer shall have the election ... to either accept title to the Property subject to such Disapproved Item, or to terminate this transaction. Buyer's failure to notify Seller in writing of Buyer's election to accept title to the Property subject to the Disapproved Item without deduction or offset shall constitute Buyer's election to terminate this transaction"). Because Alameda did not elect to accept title subject to the *Lis Pendens,* it necessarily elected to allow the Purchase Agreement to terminate pursuant to ¶ 9.3.

## B. The Purchase Agreement Automatically Terminated When The Closing Failed To Occur

Amendment No. 3 states that "[n]otwithstanding any provisions of the Purchase Agreement or of any general provisions or procedures otherwise governing the Escrow to the contrary, if . . . (ii) through no fault of [the Massmans], the Closing does not occur on or before May 26, 2004, time being of the essence, this Agreement shall automatically terminate and the Escrow shall be cancelled for all purposes, . . . without the requirement of any further notice or instructions." It is undisputed that the closing did not occur on or before May 26, 2004. Thus, the controlling question is whether the Massmans were at fault; if they were not, the Purchase Agreement immediately and automatically terminated, there was no breach and specific performance is improper.

■ Section 3–4 of Amendment No. 3 states, in pertinent part, that "[b]uyer's obligation to close escrow shall be conditioned upon the updated Title Commitment showing only the following additional title exceptions: (i) the Air Nail Lease and the Air Nail Bankruptcy, . . . ( [v] ) the [California] Action, or any other title exceptions arising by reason of the acts or omissions of Buyer, . . . and (vii) any other exceptions approved in writing by Buyer or otherwise created by Buyer's acts or omissions." The parties agree that, for the Lis Pendens to be deemed a permissible title exception for the purposes of the Purchase Agreement, it must qualify as one of these listed exceptions.

The action that precipitated the Lis Pendens is the present adversary action filed by Alameda against the Debtor, seeking a declaration from the Bankruptcy Court that the Air Nail Lease is invalid. Thus, it logically follows that the Lis Pendens arose by reason of, and was created by the acts or omissions of, Alameda. Had Alameda not filed this adversary action contesting the validity of the Air Nail Lease, there would be no Lis Pendens, no cloud on title, and thus no dispute as to the satisfaction of the title requirements of the Purchase Agreement. Because the Purchase Agreement does not say "arising solely by reason of the acts or omissions of Buyer" or "entirely created by Buyer's acts or omissions," the fact that Air Nail filed the Lis Pendens is not controlling. By the clear terms of the contract, the Lis Pendens is a permitted title exception pursuant to subsections (v) and (vii) of Amendment No. 3.

■ Furthermore, the Lis Pendens is not a separate legal claim on title to the Realty. Rather, it is merely a notice of the pending action in which Alameda challenges the legitimacy of the Air Nail Lease. There are only two possible outcomes to that dispute: the Air Nail Lease is valid or invalid. If it the Air Nail Lease is valid, it does not impair the Massmans' ability to convey title in accordance with the Purchase Agreement because the Air Nail Lease is explicitly listed as a permitted title exception. If the Air Nail Lease is invalid, as Alameda claims, then it also has no effect on title to the Realty. Thus, the pending action filed by Alameda that provoked Air Nail's filing of the Lis Pendens cannot, regardless of the outcome, affect the ability of the Massmans to fulfill their obligations under the Purchase Agreement. In essence, the Lis Pendens is merely a manifestation of the existence of the Air Nail Lease which, whether validated or invalidated in the present action, was explicitly a permitted title exception because it falls into more than one of the categories listed in Amendment No. 3. Accordingly, the Lis Pendens did not vitiate Alameda's duty to close by May 26, 2004.

Alameda insists that the *Lis Pendens* cannot be included in the permitted title exceptions because it was filed after Amendment No. 3 was executed. But this argument ignores the plain language of subsections (v) and (vii), both of which contemplate the possibility of further encumbrances resulting from Buyer's actions. Alameda also argues that the *Lis Pendens* cannot be a permitted title exception because it was improperly filed and is without merit. Both of these arguments are irrelevant. Alameda recognizes that the cloud exists, and points to it as the reason that it was relieved of its obligation to tender performance. The sole inquiry for the Court is whether the *Lis Pendens* was contemplated in the contract as a permitted title exception, and the propriety or validity of the *Lis Pendens* is immaterial to the answer to that inquiry.

■ For the Purchase Agreement to have survived beyond May 26, 2004, the Massmans must be at fault for the failure to close. Alameda asserts that the Massmans were at fault because they failed to expunge the *Lis Pendens*. This argument fails, however, because the Court has already determined that the *Lis Pendens* was a permitted title exception pursuant to the terms of the Purchase Agreement. Even if the *Lis Pendens* were not a permitted title exception, however, the Massmans would not be at fault for failing to expunge it because, as the Bankruptcy Court correctly concluded, the Purchase Agreement does not oblige the Massmans to expunge the *Lis Pendens*.

Alameda first argues that ¶ 3–4 of Amendment No. 3 requires the Massmans to expunge the *Lis Pendens*. But Amendment No. 3 merely states that "[b]uyer's obligation to close escrow shall be conditioned upon the updated Title Commitment showing only the following additional title exceptions. . . ." Nowhere in that sec-tion, or any other portion of the document, are the Massmans obliged to clear the Title Commitment of all other exceptions.

Alameda also points to ¶ 10.2 of the Purchase Agreement, not cited by the Bankruptcy Court, which provides that the Massmans must "deliver . . . an original ink signed: (a) "grant or general warranty deed, duly executed and in recordable form, conveying fee title to the [Realty] to [Alameda]." Alameda insists that the existence of the *Lis Pendens* prevented the Massmans from fulfilling this duty, and thus the failure to close was the Massmans' fault. As already discussed, however, the *Lis Pendens* merely served as notice of the action regarding the Air Nail Lease, subject to which Alameda had already agreed to take title. Thus, the *Lis Pendens* could not affect the Massmans' ability to convey title as required by ¶ 10.2.

■ Beyond the terms of the Purchase Agreement, Alameda next argues that the Massmans were obliged to remove the *Lis Pendens* by the implied covenant of good faith and fair dealing recognized by California courts. In California:

the covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. However, the covenant thus cannot be endowed with an existence independent of its contractual underpinnings. Therefore, it cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.

*EPIS, Inc. v. Fidelity and Guaranty Life Ins. Co.*, 156 F.Supp.2d 1116, 1127 (N.D.Cal.2001) (internal citations and punctuation omitted). Having already determined that the Massmans were not re-

quired by the Purchase Agreement to remove impermissible title exceptions, the Massmans did not violate the implied covenant of good faith and fair dealing when they did not remove the *Lis Pendens*.

Alameda next argues that the Massmans had a duty to remove the *Lis Pendens* pursuant to ¶ 5 of the Settlement Agreement, which provides: "(i) the Massmans shall cooperate promptly and fully with Alameda in connection with any proposed and existing legal action to be taken by Alameda with respect to the Air Nail Lease, including but not limited to providing declarations approved by counsel for the Massmans, provided that such cooperation is at no additional liability or cost to the Massmans...." This last sentence clearly refutes the contention that ¶ 5 created an obligation on the part of the Massmans to expunge the *Lis Pendens*. Expunging the *Lis Pendens* would be an additional liability to Defendants, and the Settlement Agreement merely requires them to cooperate with any legal action taken by Alameda provided it is "at no additional liability or cost to the Massmans." A determination that the Massmans had breached the Purchase Agreement by failing to expunge the *Lis Pendens* would directly contradict the scope of their obligation under ¶ 5, and thus the Court cannot reach such a conclusion.

Finally, Alameda argues that the Massmans voluntarily undertook to clear the *Lis Pendens* and thus their failure to do so constitutes fault. This argument is unavailing for several reasons. First, this argument has no factual basis. Alameda points to the affidavit of its counsel, Michael Abramson (Abramson), as evidence that the Massmans volunteered to expunge the *Lis Pendens*. Abramson's statement, however, merely relates his correspondence with the Massmans' counsel regarding their efforts to seek relief from the automatic stay to proceed against Air Nail for various monetary claims. Attached to the affidavit are several letters sent to the Massmans' counsel in which Abramson references his understanding that one of the purposes for filing the motion for relief from stay was to expunge the *Lis Pendens*. Nowhere in his statement or the attached documents, however, is there any representation from Defendants that they agreed to attempt to expunge the *Lis Pendens*. In fact, in a letter dated June 10, 2004, attorney Abramson notes that counsel for Defendants "stated that the Massmans would *not* seek lis pendens removal." Abramson Affidavit, Exhibit 2 (emphasis in original). That the removal of the *Lis Pendens* was one of the motivations of the Massmans in seeking stay relief simply does not demonstrate that they promised Alameda they would secure such removal.

Even assuming the Massmans had promised Alameda that they would expunge the *Lis Pendens*, that commitment alone neither creates a new contract nor changes the existing obligations of the Purchase Agreement. The fundamental issue is whether, under the terms of the Purchase Agreement, the failure to close was the fault of the Massmans. Alameda has offered no evidence that it gave consideration for this subsequent promise, or that it was meant to alter the parties' existing obligations. In fact, ¶ 15 of the Settlement Agreement specifically requires any amendment thereto to be in writing. Thus, any alleged subsequent oral promise by the Massmans to expunge the *Lis Pendens* cannot affect the terms of the Purchase Agreement.

## C. Rescission of Amendment No. 3 and Enforcement of the Original Purchase Agreement Are Prohibited By Law

Counts 4, 5, and 6 of Alameda's amended complaint assert essentially

the same claim for breach of the Amended Purchase Agreement, but seek rescission of Amendment No. 3 and the enforcement of the original Purchase Agreement against the Massmans. The Court sees no reason why such remedy is warranted. Under California law,

> ordinarily, a party may unilaterally rescind a contract only where there has been a total or material breach by the other party.... If one party to a contract refuses to perform a covenant which is a condition precedent or concurrent, with (sic) the consent of the other party, the first consideration is whether it is such a breach as will justify a rescission. If the covenant be of minor importance, not going to the root of the matter, and one that can be readily compensated in damages, the party injured cannot rescind, but must perform his part of the contract and seek compensation in damages.

*Integrated, Inc. v. Alec Fergusson Elec. Contractors,* 250 Cal.App.2d 287, 295–6, 58 Cal.Rptr. 503 (Cal.Ct.App.1967) (internal citations and punctuation omitted). Thus, for rescission to be an available remedy, a breach must have been so substantial as to make compensation by damages inadequate. Because the Court has determined that the Massmans did not breach the Amended Purchase Agreement by failing to remove the *Lis Pendens,* rescission is prohibited as a matter of law.

### D. The Massmans' Counterclaims

Having determined that the Massmans were not at fault for the failure to close, Amendment No. 3 mandates that the Massmans receive the relief they request in their counterclaims, namely: cancellation of escrow, indemnification, return of all building plans, declaratory relief relating to the termination of the Purchase Agreement, and attorneys' fees.

As the Court has already noted, the Purchase Agreement automatically terminated upon the parties' failure to close. Moreover, Amendment No. 3 states: "the Escrow shall be cancelled for all purposes ... without the requirement of any further notice or instructions. Immediately following ... such event, Escrow Holder shall pay the $100,000 Deposit (together with any interest earned thereon) to Seller as liquidated damages in accordance with Paragraph 21 of the Purchase Agreement, Buyer shall return to Seller all building plans for the Property previously delivered to Buyer and the Parties shall have no further rights or obligations under the Purchase Agreement."

In addition, ¶ 10 of the Settlement Agreement states that "should a suit ... be brought to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees to be fixed in amount by the Court...." Finally, ¶ 2 of the Settlement Agreement clearly establishes the Massmans' right to indemnification. As the Bankruptcy Court correctly determined, there is no conditional language in the Settlement Agreement rendering these rights contingent on the performance of any prior condition. Accordingly, the alleged breach by the Massmans is irrelevant and the terms of the contract dictate that the Massmans are entitled to summary judgment on all four of their counterclaims.

### E. Fraud

In Count 8, Alameda claims that the Massmans committed fraud by falsely representing that they would pursue expungement of the *Lis Pendens,* or at least pursue a stay to allow for such expungement. This Count clearly fails because of the valid waiver contained in ¶ 2 of the Settlement Agreement, which provides

that "Alameda hereby releases, discharges and acquits the Massmans ... of and from any and all claims ... whether known or unknown, fixed or contingent, which Alameda has had or claims to have had, now has or claims to have, or hereafter may have or claim to have, which arise out of or are in any manner whatsoever, directly or indirectly, connected with or related to: (i) The Property; (ii) The Action; (iii) The subject matter of the Action...."

Alameda advances two arguments in opposition to the application of the waiver. The first is that the Massmans cannot seek refuge in ¶ 2 of the Settlement because they breached the Purchase Agreement. The Court has already concluded that the Massmans committed no such breach, and thus this argument fails. Alameda further argues that a waiver of future claims is void as against public policy under California law, citing *FASA Corp. v. Playmates Toys, Inc.*, 892 F.Supp. 1061 (N.D.Ill.1995). In *FASA Corp.*, the district court recognized that "The California Civil Code provides that 'A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release....' Cal.Civ. Code § 1542. Thus, we believe that California recognizes the general proposition that a waiver of future unknown claims is unenforceable." *Id.* at 1066. In the instant case, however, the waiver specifically contemplated claims "which Alameda has had or claims to have had, now has or claims to have, or hereafter may have or claim to have" and thus is not a general waiver. California courts have upheld waivers of future claims where it is clear from the text of the waiver that the parties specifically contemplated such a release. *See, e.g., Carmichael v. Industrial Accident Comm'n*, 234 Cal.App.2d 311, 44 Cal. Rptr. 470 (1965); *Winet v. Price*, 4 Cal. App.4th 1159, 6 Cal.Rptr.2d 554 (1992).

Thus, the waiver in this case is not void and Alameda cannot recover on Count 8.

For the foregoing reasons, the Court finds that Alameda's objections to the Proposed Findings of Fact and Conclusions of Law are without merit and hereby adopts the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law.

An appropriate Order follows.

### ORDER

AND NOW, this 25th day of August, 2006, upon consideration of Plaintiff's appeal, including the record and all associated briefing, as well as the oral argument of the parties, it is hereby

ORDERED that the Proposed Findings of Fact and Conclusions of Law of the Bankruptcy Court are adopted and the decision below is affirmed in all respects.