Filed 12/6/22  H.P. Automotive and Tow v. City of Huntington Park CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| H.P. AUTOMOTIVE AND TOW, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> THE CITY OF HUNTINGTON PARK, <br><br> Defendant and Respondent. | B306213 <br><br> Los Angeles County <br> Super. Ct. No. VC066929 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Margaret Miller Bernal, Judge.  Affirmed.

Yacoubian & Powell and Stewart J. Powell for Plaintiff and Appellant.

Olivarez Madruga Lemeiux O'Neill, Terence J. Gallagher and Edward B. Kang for Defendant and Respondent.

————————————

Appellant H.P. Automotive and Tow, Inc. (HP Tow) contracted with the City of Huntington Park (the City) to provide vehicle towing and storage services. After a federal grand jury indicted HP Tow, it entered into a Deferred Prosecution Agreement (DPA) with the United States Attorney's Office. As part of the resolution of the federal charges, HP Tow expressly admitted to a Statement of Facts attached to the DPA which showed HP Tow had corruptly paid a City Councilmember to obtain a rate increase.

When the City learned of the allegations, it terminated the contract. HP Tow then brought this action against the City for breach of contract and breach of the implied covenant of good faith and fair dealing. In granting the City's motion for summary judgment, the trial court found no triable issue of material fact as to whether HP Tow engaged in conduct in violation of the contract. The court also found no violation of the implied covenant of good faith and fair dealing, which was based on the same conduct as the breach of contract claim.

HP Tow appeals, contending there were triable issues of material fact as to a myriad of issues. But we find it unnecessary to address every issue as we conclude HP Tow's express adoption of the factual allegations set out in the Indictment, DPA and Statement of Facts conclusively establish HP Tow breached the contract by violating the law. We affirm the judgment.

## BACKGROUND

Since 1999, HP Tow provided vehicle tow and storage services to the City of Huntington Park by written contract. The contract set out the rights and responsibilities of the parties under the agreement. Paragraph 7 of the contract, entitled "EMPLOYEE STANDARDS," provides "TOW SERVICE agrees to

2

see that all its units and employees shall conduct their business in an orderly, ethical, businesslike manner and use every means to obtain and keep the confidence of the motoring public." Paragraph 14, entitled "RATES AND CHARGES," permits HP Tow to apply for a rate adjustment annually and provides: "TOW SERVICE shall make no payments for this contract and shall give no gifts to any of CITY's officers or employees." Paragraph 16 permits the City to terminate the contract if HP violates the contract and fails to cure the violation within 90 days.

On August 19, 2013, HP Tow proposed a rate increase for its services. The five-member City Council voted on the request, which did not pass. City Councilmember Valentin Amezquita and two other members voted against the request.

According to the admitted Statement of Facts attached to the DPA, Sigrid Lopez, a lobbyist for HP Tow, contacted Amezquita the day after the vote to set up a meeting. Unbeknownst to Lopez or HP Tow, Amezquita was acting as a cooperating source for the FBI.[1] The meeting took place on August 29, 2013, and was attended by Lopez, Sukhbir Singh, a co-owner and officer of HP Tow, and Councilmember Amezquita. Singh asked Amezquita for his "support" and "blessing" to move the rate increase measure forward. Lopez told Amezquita that she and Singh would be there to help Amezquita if he needed help with any "kick off or remaining [campaign] debts" or future campaign events. She said, "You don't have to ask [for support] because we will be there, ok, . . . and that's because you make it natural for us to want to help."

---

[1] The Statement refers to Cooperating Source 1 or CS-1. There is no dispute this was Amezquita.

The Statement of Facts details additional meetings between Singh and Amezquita from October 2013 through January 2014. Singh gave Amezquita eight checks totaling $2000 over the course of the meetings. These checks were from Singh and his friends and family. During the meetings, Singh made clear he wanted Amezquita's help in passing a rate increase measure. He also wanted Amezquita to pressure the City's police chief to tow and impound more vehicles.

On January 21, 2014, the City Council unanimously approved the rate increases proposed by HP Tow. Amezquita was not present and did not vote.

On October 5, 2015, the federal government filed a federal criminal complaint against Singh and Jimmy Sandhu, another co-owner of HP Tow. The complaint alleged that between August 2013 and March 2015, the men conspired to commit federal program bribery in violation of title 18 of the United States Code section 666. The complaint expressly incorporates an affidavit from FBI Special Agent Jason Dalton. The affidavit sets forth the federal government's case against the men, which involved payments to City Councilmember Amezquita. The affidavit sets out verbatim conversations between Amezquita and Singh which were recorded by Amezquita with equipment supplied by the FBI. The Statement of Facts, which was later attached to the DPA, is a condensed and redacted version of this affidavit.

On December 23, 2015, the City Council held a special meeting and voted to terminate HP Tow's contract. It is not clear from the record whether the City was aware of the investigation or complaint at that time. The termination letter sent the same day states the City was terminating the contract effective March 31, 2016, and indicates the termination was due to the high cost

4

of HP Tow's services.  On February 16, 2016, the City rescinded the termination but voted again to terminate the contract on the ground that HP Tow had violated the law and thereby also violated the contract.

On February 22, 2016, City sent a second letter to HP Tow. This letter states HP Tow had been found in breach of the contract.  The letter states the City is aware of a criminal complaint against Singh and Sadhu alleging a conspiracy to commit bribery, and of the supporting affidavit of FBI Special Agent Jason Dalton which states that offers of payment were made to a member of the City Council.  The letter states that this information showed conduct in violation of Paragraph 14 of the contract.

The letter also advises there is an implied provision in the contract that HP Tow must comply with all federal, state and local laws, and that the current criminal charge "places into question HP Tow's compliance with such implied terms of the [contract]."  The City later indicated that in the letter it was referring to Paragraph 7 of the contract, which required HP Tow to conduct its business in an ethical, businesslike and orderly manner.

On February 26, 2016 the U.S. Attorney's Office (USAO) filed a two-count Indictment against HP Tow and Singh.[2]  The Indictment alleges HP Tow and Singh committed one count of bribery in violation of title 18 of the United States Code section 666(a)(2) and Singh made a false statement to the FBI in violation of title 18 of the United States Code section 1001(a)(2).

---

[2]     Co-owner Sandhu was not named in the Indictment.

5

On July 13, 2016, Singh entered into a plea agreement in which he agreed to plead guilty to making a false statement to a government agency in exchange for dismissal of the remaining bribery count and a recommendation for a reduced sentence.[3]

On October 14, 2016, HP Tow entered into the DPA. As part of this agreement, "HP Tow *admits, accepts and acknowledges* that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Indictment and as set forth in the Statement of Facts, which are incorporated herein by reference, and *that the allegations in the Indictment and the facts described in the Statement of Facts are true and accurate.*" (Italics added.) The DPA further provides: "HP Tow expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for HP Tow make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by HP Tow set forth above or the facts described in the attached Statement of Facts."

---

[3] The false statement occurred when an FBI agent asked Singh: "[D]o they either ask you to do it this way or do you ever tell them the way that we're gonna do it is we're gonna have [the payment] come from other people that way it doesn't look like it's coming from H-P Tow." Singh replied: "Oh no. We never have a conversation like that. No." In fact, on October 4, 2013, Singh and Amezquita discussed this topic. Singh said: "[W]hat we can do, we can get it from friends, checks . . . . [¶] . . . [¶] Which doesn't show [it's] under H-P Tows."

On February 15, 2018, HP Tow filed the present complaint alleging two causes of action against the City for breach of contract and breach of the implied covenant of good faith and fair dealing.  City sought and obtained summary judgment and this appeal followed.

## DISCUSSION

We review the grant of a motion for summary judgment de novo.  (*Nakamura v. Superior Court* (2000) 83 Cal.App.4th 825, 834.)  A defendant moving for summary judgment has the burden to establish a complete defense or to show that one or more elements of the plaintiff's cause of action cannot be established.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849–850.)  Once the defendant has done so, the burden shifts to the plaintiff to present admissible evidence that a triable issue of material fact exists.  (*Id*. at pp. 850, 855–856.)  In determining whether there is a triable issue of material fact, we "liberally constru[e] the evidence in support of the party opposing summary judgment and resolv[e] doubts concerning that evidence in favor of that party."  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  We draw all reasonable inferences in favor of the opposing party.  (*Aguilar,* at p. 843.)

A.   *HP Tow's Payments Breached the Contract and the City's Termination of the Contract Was Proper.*

The City moved for summary judgment on the ground that HP Tow's "prior material breach of the [contract] excused and authorized [the City's] termination of the [contract].  (*See, e.g., Plotnick v. Meihaus* (2012) 208 Cal.App.4th 1590, 1602.)"

The City contended HP Tow had breached Paragraphs 7 and 14 of the contract by providing payments to Amezquita,

7

disguised as campaign contributions, "in exchange for both a favorable vote on the Rate Increase Measure, as well as pressure by Mr. Amezquita on the City's police chief to increase the amount of impounds and tows thus increasing [HP Tow's] revenues."

Appellant contends there are disputed issues of material fact as to whether it breached the contract, specifically whether (1) the payments made to Amezquita were payments for a contract prohibited by Paragraph 14 of the contract and/or whether they were gifts prohibited by Paragraph 14; (2) whether the contract contains a term requiring HP Tow to comply with all laws; (3) whether Singh's and Sandhu's interactions with Amezquita violated the law; and (3) whether the City violated Paragraph 16 of the contract by acting capriciously in terminating the contract without investigating the criminal allegations against HP Tow or allowing HP Tow a meaningful opportunity to cure. We have reviewed the grant of summary judgment de novo and find no disputed issues of material fact. The trial court did not err.

1. *HP Tow Violated Federal Law and Thereby Violated Its Contract with the City.*

Paragraph 7 of the contract requires HP to conduct its business in "an orderly, ethical, businesslike manner." The general meaning of ethical behavior is "conforming to accepted standards of conduct"[4] or "pertaining to right and wrong in

---

[4] Merriam-Webster Dictionary Online (2022) <https://www.merriam-webster.com/dictionary/ethical> [as of December 6, 2022], archived at <https://perma.cc/6WFN-T3BH>.

conduct."[5]  At a minimum this requires following applicable laws in the conduct of its business.

Paragraph 14 of the contract prohibits HP Tow from making "payments for [the] contract" or giving "gifts to any of CITY'S officers or employees."  To paraphrase a saying about gravity, these requirements are not merely good ideas, they are the law: such payments are illegal under state and federal law. Thus, at a minimum the contract requires HP Tow to follow the laws prohibiting payments to government officials in exchange for the contract, or favorable actions under the contract.  This is the law at issue in this matter.  Our conclusion is only reinforced by the fact that HP Tow itself relies on California law to give meaning to the provisions of Paragraph 14.

The trial court found HP Tow breached Paragraphs 7 and 14 of the contract by taking the actions described in the Statement of Facts attached to the DPA; it is undisputed HP Tow admitted those facts, which included making corrupt payments to Amezquita.  We have independently reviewed the DPA's Statement of Facts and the Indictment and have reached the same conclusion as the trial court: the admitted facts show Singh, then HP Tow's president, made payments to Amezquita in exchange for Amezquita's agreement to help obtain approval of HP Tow's requested rate increase, and to push the City police chief to impound more vehicles by saying a public safety issue was involved.  These acts violated both federal law and the terms

---

[5]     Collins Dictionary Online (2022) <https://www.collinsdictionary.com/us/dictionary/english/ethical> [as of December 6, 2022], as archived at https://perma.cc/L6LL-JV55>.

9

of the contract.  Further, even assuming the Statement of Facts was not sufficient to show a violation of the law, we find the DPA itself contains an admission by HP Tow that it is responsible for Singh's violations of the law.

Splitting hairs, HP Tow contends there are triable issues of fact because it has *never admitted* that its actions violated any law.  In support of its position that it never admitted guilt, HP points to this sentence in the DPA: "HP Tow's entry into this Agreement does not constitute an admission that it is guilty of the offense charged in the Indictment."

To that contention, we say, "So what."  It is immaterial whether HP Tow admitted the legal conclusion that it was guilty of a crime.  It admitted the facts that supported the court's legal conclusion that it had acted unethically and illegally and therefore in breach of the contract.  In the section entitled "**Criminal Indictment and Acceptance of Responsibility**," the DPA clearly states: "HP Tow admits, accepts and acknowledges that *it is responsible under United States law for the acts of its officers*, directors, employees, and agents *as charged in the Indictment* and as set forth in the Statement of Facts, which are incorporated herein by reference, and that *the allegations in the Indictment* and the facts described in the Statement of Facts *are true and accurate*."  (Italics added.)  One of the factual allegations in the Indictment is that "Beginning in or about August 2013 . . . defendants SUKHBIR SINGH and H.P. TOW, corruptly gave, offered to give, and agreed to give, things of value, namely campaign checks, to Cooperating Witness 1 [Amezquita], intending to influence and reward Cooperating Witness 1 in connection with a business, a transaction, and series

10

of transactions of the City . . . namely, the towing of vehicles and the storage of towed vehicles in the City."**6**

Moreover, the sentence HP Tow relies on simply means it is not entering a formal plea of guilty or no contest in the federal criminal proceedings.  The context of the statement makes this completely clear.  The statement is part of a discussion of the effect of the DPA if the US Attorney pursues the prosecution of the case: "Should the USAO pursue the prosecution that is deferred by this Agreement, HP Tow stipulates to the admissibility of the Statement of Facts . . . and will not contradict anything in the Statement of Facts at any such proceeding.  HP Tow's entry into this Agreement does not constitute an admission that it is guilty of the offense charged in the Indictment."  In other words, if the USAO pursues prosecution, the DPA does not prevent HP Tow from entering a not guilty plea and demanding a trial.  However, although HP Tow did not enter a formal plea of guilty, it did agree not to contradict the facts as stated in the Statement of Facts and it adopted as true the factual allegations of the Indictment.  They are indisputable for purposes of a criminal trial.

For our purposes, in a section entitled "**Public Filings & Statements**," the DPA sets forth a different requirement for HP Tow in proceedings other than a federal criminal prosecution.  There, "HP Tow expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents,

---

**6**     According to the DPA, the US Attorney agreed to enter into the Agreement in part due to "HP Tow's willingness to acknowledge and take responsibility for the actions of its agent(s)."

11

or any other person authorized to speak for HP Tow make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by HP Tow set forth above or the facts described in the attached Statement of Facts." Thus, HP Tow is stuck with the facts it admitted. The admitted fact that HP Tow "corruptly" offered payments to Amezquita remains undisputed, as part of its acceptance of responsibility.

Even absent this provision of the DPA, HP Tow would be judicially estopped from contradicting its acceptance of responsibility in the DPA. " 'Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the judicial process.' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 (*Jackson*).) "[J]udicial estoppel is especially appropriate where a party has taken inconsistent positions in separate proceedings." (*Ibid.*) " 'The gravamen of judicial estoppel is not privity, reliance, or prejudice. Rather, it is the intentional assertion of an inconsistent position that perverts the judicial machinery.' " (*Id.* at p. 183.) " ' "Judicial estoppel is 'intended to protect against a litigant playing "fast and loose with the courts." ' " ' " (*Id.* at p. 181.)

The doctrine applies "when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson, supra*, 60 Cal.App.4th at p. 183.) HP Tow has not claimed that its position in the federal

12

criminal proceedings were taken as a result of ignorance, fraud, or mistake. The remaining requirements are clearly met here.[7]

2.    *HP Tow Has Forfeited Its Claim That the City Lacked Sufficient Knowledge of HP Tow's Criminal Activity.*

HP Tow contends the City could not have relied on the admissions of the DPA to terminate the contract, because the DPA was executed in October 2016, months after the City first terminated the contract in December 2015 and then re-terminated the contract in February 2016. HP further contends that City did not know any details of Singh's and Sandhu's interactions with Amezquita and did not conduct any due diligence or ask HP Tow about the allegations, and so there is a triable issue of material fact as to whether the City acted capriciously in terminating the contract.

As part of this contention, HP Tow now claims the December 23, 2015 letter was a breach of contract. HP Tow is judicially estopped from making this contention because it claimed in opposition to the motion for summary judgment that the letter itself did not constitute a breach because the termination was not effective until March 31, 2016. HP Tow in fact relied on this argument to defeat summary judgment on the

_____

[7]    To be clear, the DPA in this case, as is the norm in federal court, took the form of a pleading filed with the federal court. A DPA must be approved by the court because its "viability depends on the specific exclusion of time for such agreements set forth in the Speedy Trial Act, 18 U.S.C. § 3161(h)(2)" which requires court approval. (*U.S. v. Fokker Services B.V.* (D.C. Cir. 2016) 818 F.3d 733, 739.) Thus, the requirement for taking a position in a judicial proceeding is met.

ground that the action was barred by the statute of limitations. (See *Jackson, supra,* 60 Cal.App.4th at pp. 181–183 [discussing doctrine of judicial estoppel].)[8]

As for the City's knowledge when it voted on February 16, 2016 to terminate the contract, the declaration of the City's Chief of Police Cosme Lozano established that the City was aware of the criminal charges involving HP Tow in late 2015 or early 2016. The City attached an article from the Los Angeles Times dated January 15, 2016, to its motion for summary judgment; the article states that Amezquita was the FBI informant in the Huntington Park bribery case, Amezquita recorded his conversations with Singh, and details of the conversations could be found in an affidavit written by the lead FBI agent in the case. Two citizens expressly mentioned the FBI investigation at the regular City Council meeting on February 2, 2016, while others more generally mentioned laws being broken. The City's mayor "addressed allegations regarding the FBI."

The February 22, 2016 letter terminating the contract, sent to Singh's attention, specifically states that the City "has been informed that a Federal Investigation ('Investigation') has been conducted and is currently ongoing which involves you and other individuals employed or associated with HP Tow. (See

---

[8]     Further, it is undisputed that HP Tow did not " 'treat the [letter] as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the [contract].' " (See *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 489.) So, under HP Tow's position in the trial court, before the breach of contract occurred on the stated termination date of March 31, 2016, the City rescinded the termination.

14

Magistrate's Case No. M 15 01849.)  Pursuant to the records of the Investigation, a Criminal Complaint has been filed which alleges a conspiracy by you and Jimmy Sandhu to commit an offense pursuant to the federal bribery program (18 U.S.C. § 666). The Investigation further sets forth and alleges through an Affidavit of FBI Special Agent Jason Dalton that offers of payments were made to a member of the Huntington Park City Council."  The letter memorializes the February 16, 2016 vote to terminate, and the only reasonable inference from this letter is that the City was aware of this information when it conducted that vote.  We note the letter also gives HP Tow 90 days to cure the breach.

HP Tow has not cited any cases discussing what amount or type of proof is required where one party terminates a contract based on information that another party has violated a provision of the contract by violating the law.  Thus, HP Tow has forfeited its claim that City acted without sufficient knowledge of the details of HP Tow's conduct.  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.)  To the extent that HP Tow also contends the terminating party must wait until the violating party admits criminal liability or is convicted of a crime, it has forfeited that claim for the same reasons.  Even assuming the issue were not forfeited, we would not agree with HP Tow.  There is no guarantee that a criminal prosecution will be pursued in every instance of alleged wrongdoing.  The issue may then be determined in a civil case alleging breach of contract.  Had HP Tow not entered into the DPA, rendering the facts indisputable, it could have litigated the issue of its conduct and disputed the factual account in a trial of the complaint it filed in this action.

3.    *The City Provided the Required Opportunity for Cure.*

HP Tow contends there is a triable issue of material fact as to whether the City provided the contractually required opportunity for HP Tow to cure the alleged breach or whether it acted capriciously in terminating the contract.  Part of this claim is a variation of HP Tow's claim that the City did not have evidence of HP Tow's violation of the contract: HP Tow contends the City had no evidence of a violation and improperly tried to shift the burden of proof to HP Tow to disprove the unfounded, unproven, nonspecific allegation of a breach under the guise of requiring a cure.  As set forth above, the City's letter mentioned the criminal complaint and incorporated FBI affidavit as the basis for its breach allegation, and HP Tow has forfeited any claim that this was not sufficient knowledge.  The letter provided HP Tow the opportunity to refute or explain the criminal investigation.  HP Tow does not explain what other "cure" was possible.

HP Tow further contends that a letter sent by its counsel within the 90-day cure period cured the breach by refuting the allegations with both fact and law.  The City was permitted to evaluate the denials and find them unpersuasive.  Had HP Tow not entered into the DPA, it could have sought a determination of whether that letter "cured" the breach by showing no violation of the law.

HP Tow also claims that there is a triable issue of material fact as to whether City had an actual intention of allowing a cure, because City voted to terminate the contract before sending the letter.  In fact, the letter states the City is providing a 90-day notice of termination to permit a cure, and the contract will be terminated at the end of that period if no cure was made.  As the

16

City's actions connected to the December 2015 termination notice show, the City was capable of rescinding a termination within the 90-day notice/cure period.  Thus, there is no triable issue of material fact about City's intentions, assuming such an intention would be relevant.

B.    *The Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Superfluous and Properly Disregarded.*

HP Tow contends there are triable issues of material fact concerning whether the City breached the implied covenant by cancelling the contract in December 2015 in violation of the Ralph M. Brown Act (Gov. Code, § 54950 et seq.), then rescinding the action only to cancel the contract again in February 2016, then "belatedly" attempting to justify its actions on an interpretation of the contract that is not found in the contract's express terms, then immediately entering into a new contract with a different company without conducting any due diligence or waiting for the legal process to play out.  We do not agree.

All but one of these contentions involve the same actions which form the basis of the breach of contract cause of action.  "If the allegations [of the implied covenant breach] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.  Thus, absent those limited cases where a breach of a consensual contract term is not claimed or alleged, the only justification for asserting a separate cause of action for breach of the implied covenant is to obtain a tort recovery."  (*Careau & Co.*

*v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395.)

The only new or different contention is the suggestion that the City somehow acted wrongly in immediately entering into a new contract for towing services. Even assuming there was some benefit to the City from the new contract, the termination of the contract with HP Tow was authorized by the contract. A party cannot violate the implied covenant by taking any action expressly authorized under the terms of the contract, even if it gains an advantage for itself by doing so. (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 376.)

HP Tow also claims on appeal that the entire scenario leading up to the termination was "orchestrated" by Amezquita. Amezquita was not acting as an agent of the City in his interactions with HP Tow representatives; he was acting as an FBI cooperating source. It is undisputed that the City had no foreknowledge of Amezquita's role as an informant and did not authorize him to act in that capacity. Thus, Amezquita's actions cannot form the basis of a breach by the City of the implied covenant of good faith and fair dealing.

C.    *The Trial Court Did Not Abuse Its Discretion in Excluding Portions of the Lopez and Sandhu Declarations.*

In opposition to summary judgment, HP Tow submitted the declarations of HP Tow lobbyist Lopez and HP Tow co-owner Sandhu. HP Tow contends the trial court abused its discretion in excluding portions of both declarations. As HP Tow acknowledges, we review the trial court's decision for an abuse of discretion. (See, e.g., *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852.) We find none.

18

HP Tow is judicially estopped from contradicting its position in the federal criminal proceedings, and specifically from denying responsibility for its actions and the actions of Singh. That is the clear purpose of both declarations, and so the declarations were not relevant, and the trial court did not abuse its discretion in excluding portions of the declarations which attempted to avoid or contradict HP Tow's acceptance of responsibility. In addition, even assuming for the sake of argument that HP Tow could contradict the DPA, it was Singh who made the payments in exchange for Amezquita's assistance. There is nothing in Lopez's or Sandhu's declarations to show that Singh discussed his subjective intent in making the payments with them and so the declarations lack personal knowledge and foundation. HP Tow did not proffer a declaration from Singh himself.

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



STRATTON, P. J.

We concur:



GRIMES, J.          WILEY, J.

19